UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROVIO ENTERTAINMENT LTD fka ROVIO MOBILE OY, | Case No: C 12-5543 SBA |
| Plaintiff, | **ORDER** |
| vs. | |
| ROYAL PLUSH TOYS, INC., WESTERN SALES AND SERVICES INC., ROYAL TRADE INT'L INC., JONG K PARK, and DOES 1-10, inclusive, | |
| Defendants. | |

On October 29, 2012, Rovio Entertainment Ltd fka Rovio Mobile Oy ("Plaintiff")
brought the instant copyright and trademark infringement action against Defendants Royal
Plush Toys, Inc. ("RPI"), Western Sales and Services Inc. ("WS & S"), Royal Trade Int'l
Inc. ("RTI"), and Jong K. Park ("Park") (collectively, "Defendants"). Before the Court is
Plaintiff's ex parte motion for a temporary restraining order ("TRO"), an order to show
cause ("OSC") why a preliminary injunction should not issue, a seizure order, a substitute
custodian order, and an expedited discovery order.

Plaintiff is a Finland-based company that developed the puzzle video game Angry
Birds. Plaintiff alleges that Defendants are allegedly intentionally and willfully selling
infringing and unauthorized knockoff plush toys that are nearly identical to Plaintiff's
Angry Birds plush toys in violation of Plaintiff's copyright registrations and ANGRY
BIRDS trademarks. Plaintiff has sued Defendants for copyright infringement under 17
U.S.C. § 501(a), trademark counterfeiting under 15 U.S.C. §§ 1114(1)(b), 1116(d), and
1117(b)-(c), trademark infringement under 15 U.S.C. § 1114, false designation of origin,

1  passing off, and unfair competition under 15 U.S.C. § 1125(a), unfair competition under

2  California common law, and unjust enrichment.   Plaintiff seeks five remedies from this

3  Court.

4      First, under Rule 65 of the Federal Rules of Civil Procedure, Plaintiff requests an ex

5  parte TRO enjoining Defendants from manufacturing, distributing, supplying, or selling

6  merchandise infringing upon Plaintiff's copyrights and trademarks.  Second, Plaintiff

7  requests an OSC hearing regarding the issuance of a preliminary injunction.  Third,

8  Plaintiff requests an ex parte seizure order, directing the United States Marshal or other law

9  enforcement to seize and impound any and all infringing and unauthorized merchandise

10  that infringe Plaintiff's copyrights and trademarks, the means of making the infringing

11  merchandise, and the business records relating thereto.  Fourth, Plaintiff requests this Court

12  order that items seized be turned over to the custody of Plaintiff's counsel, J. Andrew

13  Coombs, A Professional Law Corporation, for preservation throughout the trial of this

14  matter.  Finally, Plaintiff requests leave to take immediate discovery to identify other

15  entities involved in the counterfeiting scheme and to learn the scope of Defendants'

16  distribution of the counterfeit products.

17      Having read and considered the papers filed in connection with this matter and being

18  fully informed, the Court hereby DENIES the request for an ex parte TRO, DENIES the

19  request for an ex parte seizure order, DENIES the request for a substitute custodian order,

20  DENIES the request for leave to take immediate discovery, and GRANTS the request for

21  an OSC hearing regarding issuing a preliminary injunction.

22  I.    **BACKGROUND**

23      Angry Birds is a puzzle video game developed by Plaintiff.  Compl. ¶ 18.  The game

24  was first released for Apple Inc's iOS in December 2009.  Id.  In the game, players use a

25  slingshot to launch birds at pigs stationed on or within various structures, with the intent of

26  destroying all the pigs on the playfield.  Id. ¶ 19.  As players advance through the game,

27  new birds appear, some with special abilities that can be activated by the player.  Id.

28

The Angry Birds game has been downloaded over one billion times across all platforms, including both regular and special editions. Compl. ¶ 20. Players log more than 1 million hours of game time each day on the iOS version of the game, 3.33 million hours per day across all platforms, and there are more than 40 million active users monthly. Id. ¶ 21. The game has been called "one of the most mainstream games out right now," "one of the great runaway hits of 2010," and "the largest mobile app success the world has seen so far." Id. ¶ 20. The Angry Birds game has received several awards, including the "Best Game App" and "App of the Year" at the 2011 "UK Appy Awards, and "Best Game for Handheld Devices" at the 15th edition of the "Webby Awards." Id. ¶ 22.

Angry Birds' popularity led to versions of Angry Birds being created for personal computers and gaming consoles, a market for merchandise featuring its characters, and even long-term plans for a feature film or television series. Compl. ¶ 23. Plaintiff has an extensive world-wide licensing program for merchandise featuring its characters. Id. ¶ 24. The most popular items have been t-shirts, plush toys and cell phone accessories ("Products"). Id. Of these items, Plaintiff's most popular product is its collection of round plush Angry Birds toys (collectively, "the Angry Birds Plush Line"). Greenfield Decl. ¶ 6, Exh. A. These round plush Angry Birds are sold in various sizes and styles and some include sound. Id.

Plaintiff alleges that it has gained significant common law trademark and other rights in its trademarks and Products through its use, advertising and promotion. Compl. ¶ 25. Plaintiff has also obtained federal trademark and copyright registrations. Id. Plaintiff. is the owner of the United States Trademark Registration No. 3,976,576 for ANGRY BIRDS for a wide variety of goods in Classes 9, 16, 28 and 41 and United States Trademark No. 3,988,064 for  for a wide variety of goods in Classes 9, 16, 28 and 41 (the "Marks"). Id. ¶ 26, Exh. A.

Plaintiff also owns copyrights in and related to the Products. Compl. ¶ 27. Plaintiff's copyrights protect the various proprietary characters originated in the Angry

1  Birds game and extended through its line of Products.  Id.  The line is updated from time to

2  time to add new designs and products.  Id.  Plaintiff owns several United States Copyright

3  Registrations relating to its products, including, among others, the following certificates of

4  registrations: VA1778702, VA1778705, VA1778703, VA1776995, VA1776992,

5  VA1777195, as well as numerous common law copyrights (collectively, "Copyright

6  Works").  Id. ¶ 28, Exh. B.

7         In summer 2010, Plaintiff granted Commonwealth Toy & Novelty Co., Inc.

8  ("Commonwealth"), a United States license (and elsewhere), to market, manufacture,

9  distribute and sell Angry Birds plush, key chains, balls, PVC figures, bean bags, Christmas

10  stockings, seasonal Summer goods, banners and flags, lanyards, magnets, plush hats, snow

11  globes, and drinkware.  Compl. ¶ 30.  Currently, Commonwealth's most popular product is the

12  Angry Birds Plush Line.  Id. ¶ 32, Exh. C.  Commonwealth sells the Angry Birds Plush Line

13  to retailers such as Toys R Us, Kmart, Walmart, Shopko, Hallmark, Build A Bear, Pamida,

14  Walgreens, CVS, Justice, Claires, Hot Topic, Transworld, and Spencer Gifts, among others.

15  Id. ¶ 33.  Commonwealth also sells to over one thousand (1,000) other independent retailers in

16  the United States.  Id.  The Angry Bird Plush Line is also sold (given away as prizes) in

17  amusement parks such as Universal Studios, Knotts Berry Farm, Cedar Point, Dorney Park,

18  Hershey Park, Six Flags, Sea World, and Lego Land.  Id.

19         The Angry Birds Plush Line is a very substantial part of both Plaintiff's and

20  Commonwealth's respective businesses.  Greenfield Decl. ¶ 17.  Since late 2010,

21  Commonwealth has sold over thirty million units of the Angry Birds Plush Line have been

22  sold in the United States alone.  Id. ¶ 9.

23         According to Plaintiff, its games and Products have become targets for unscrupulous

24  individuals and entities that deal in infringing products and services.  Compl. ¶¶ 35-36.

25  The actions of these individuals and entities include manufacturing, copying, exporting,

26  importing, advertising, promoting, selling, and distributing infringing and otherwise

27  unauthorized products.  Id. ¶ 36.  Because Plaintiff's Copyrights and Marks are vital to its

28

1    business, Plaintiff actively polices and enforces its intellectual property rights.  Hed Decl. ¶

2    11.

3          Plaintiff and Commonwealth have both discovered that large quantities of pirated

4    copies of the Angry Birds Plush Line are being sold throughout the United States.

5    Greenfield Decl. ¶ 10.  Specifically, Plaintiff and Commonwealth have recently discovered

6    that the Defendants are selling infringing copies of the Angry Birds Plush Line from their

7    business location at 4771 Arroyo Vista Blvd., Suites A & B, Livermore, CA 94551.[1]  See

8    Id.; Drangel Decl. ¶¶ 4-16, Exhs. A-G; Buckner Decl. ¶¶ 2-5, 7-29.[2]  Plaintiff believes that

9    Defendants also sell their infringing products to flea market vendors, kiosk owners, crane

10   operators, and discount chains at a substantial discount.  Greenfield Decl. ¶ 11.

11         Following the discovery of Defendants' activities, Plaintiff directed a licensed

12   investigative firm, Investigative Consultants, Inc. ("IC"), to make purchases of Defendants'

13   goods.  See Buckner Decl. ¶¶ 2-29; Drangel Decl. ¶¶ 12-15, Exh. G.  The goods purchased

14   were examined by Plaintiff's counsel who confirmed that they violate both Plaintiff's

15   copyright and trademark rights.  Drangel Decl. ¶¶ 15-16, Exh. G; Compl. ¶ 39.  According

16   to Plaintiff, a side-by-side comparison of the parties' respective goods shows that the

17   Defendants' knockoff products are nearly identical to Plaintiff's authentic Angry Bird plush

18   products with only minor variations that no ordinary consumer could recognize.  Greenfield

19   Decl. ¶ 12, Exh. B; see also Drangel Decl. ¶ 15, Exh. G; Compl. ¶ 38.  Many of the products

20   bear labels and hang tags bearing Plaintiff's ANGRY BIRDS and/or  Marks.

21   Compl. ¶ 38; see also Drangel ¶ 15, Exh. G.

22

23

24   _____

25        [1] According to the investigative firm retained by Plaintiff's counsel, 4771 Arroyo
     Vista Blvd., Suite B, Livermore, CA 94551 is a tan building that houses suites with
     multiple businesses.  Buckner Decl. ¶¶ 8-9.  The entrance to the location has black tinted
26   glass windows and a black tinted glass door.  Id. ¶ 9.  There is no visible sign outside the
     location that identifies it as RPI.  Id.

27
          [2] Defendants' infringing products have been seized by United States Customs on at
28   least two occasions in June and July 2012.  Drangel Decl. ¶¶ 5-6, Exhs. A-B.

1    Plaintiff alleges that by these sales and their other dealings in infringing products,

2    including importing, advertising, displaying, distributing, selling and/or offering to sell

3    infringing products, Defendants have violated Plaintiff's exclusive rights in its Copyright

4    Works and Marks.  Compl. ¶ 40.  Plaintiff also alleges that Defendants used images and

5    designs that are substantially similar to, identical to, and/or constitute infringement of

6    Plaintiff's intellectual property to confuse consumers and aid in the promotion and sales of

7    their unauthorized products.  Id.  Plaintiff further alleges that Defendants had knowledge of

8    Plaintiff's ownership of the Copyright Works and Marks prior to the actions alleged in the

9    complaint and adopted them in bad faith.  Id. ¶ 41.  Neither Plaintiff nor any authorized

10   agents have consented to Defendants use of any of Plaintiff's intellectual property,

11   including its Copyright Works and Marks.  Id.

12   According to Plaintiff, Defendants have willfully and in bad faith infringed its

13   Copyright Works and Marks, committed unfair competition, and unfairly profited from

14   such activity at Plaintiff's expense.  Compl. ¶ 43.  Plaintiff alleges that Defendants' conduct

15   has caused irreparable harm to Plaintiff, and, unless enjoined, Defendants will continue to

16   cause irreparable harm to Plaintiff.  Id.  Specifically, Plaintiff claims that Defendants'

17   intentional, deceitful misconduct not only results in lost profits to Plaintiff and

18   Commonwealth, but it destroys the inherent value of Plaintiff's Copyright Works and

19   Marks, it impairs the Plaintiff's reputation for providing quality products, it dilutes the

20   Plaintiff's brand and goodwill, and it negatively affects the Plaintiff's relationships with

21   current customers (both retail sellers and ultimate consumers) and its ability to attract new

22   customers.  Pl.'s Mtn. at 6 (citing Greenfield Decl. ¶¶ 13-18).  Plaintiff also claims that

23   Defendants' conduct harms consumers by "duping" them into thinking they are purchasing

24   genuine Angry Birds plush toys made of high quality materials and in accordance with

25   United States consumer product safety laws when, in reality, they are purchasing cheap

26   knockoffs made of questionable materials by unidentified manufacturers.  Pl.'s Mtn. at 6

27   (citing Greenfield Decl. ¶¶ 19-23, Exhs. C-E; Drangel Decl. ¶¶ 14-16, Exh. G).

28   ///

## II.      DISCUSSION

### A.      Ex Parte TRO

#### 1.      Legal Standard

The standard for a TRO is the same as for a preliminary injunction.  See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001); Lockheed Missile & Space Co. v. Hughes Aircraft, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).  To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  A restraining order is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22.

Previously, courts presumed the likelihood of irreparable harm when a plaintiff demonstrated a likelihood of success on a copyright or trademark infringement claim.  See Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999); Apple Computer, Inc. v. Formula Intern. Inc., 725 F.2d 521, 525 (9th Cir. 1984).  However, the governing law has changed in light of Winter and eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006) (disapproving the use of "categorical" rules regarding irreparable harm in patent infringement cases, concluding that such a rule "cannot be squared with the principles of equity adopted by Congress.").

Now, presuming irreparable harm is impermissible when a plaintiff demonstrates a likelihood of success on a copyright infringement claim.  See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 994, 998 (9th Cir. 2011) (applying e-Bay's rule to a request for injunctive relief in a copyright infringement claim and reversing the Circuit's

1 | "long-standing precedent finding a plaintiff entitled to a presumption of irreparable harm on

2 | a showing of likelihood of success on the merits in a copyright infringement case."); Perfect

3 | 10, Inc. v. Google, Inc., 653 F.3d 976, 979-981 (9th Cir. 2011) (concluding that the Ninth

4 | Circuit's longstanding rule that a showing of a reasonable likelihood of success on the

5 | merits in a copyright infringement claim raises a presumption of irreparable harm, "is

6 | clearly irreconcilable with the reasoning of the Court's decision in eBay and has therefore

7 | been "effectively overruled.").

8 | The continuing vitality of the presumption in trademark infringement cases is not

9 | clear. After Winter and eBay, the Ninth Circuit has upheld a district court's application of

10 | its prior precedent that, "[i]n a trademark infringement claim, 'irreparable injury may be

11 | presumed from a showing of likelihood of success on the merits.' " Marlyn Nutraceuticals,

12 | Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009). However, another

13 | Ninth Circuit panel, in the context of a copyright infringement action, has stated that "the

14 | summary treatment of the presumption" in Marlyn Nutraceuticals "without consideration of

15 | the effect of eBay and Winter does not . . . constitute an affirmation of the presumption's

16 | continued vitality." Flexible Lifeline Sys., 654 F.3d at 997.

17 | While the Ninth Circuit has not yet directly addressed the effect of Winter and eBay

18 | upon the presumption of irreparable harm in the trademark infringement context, district

19 | courts in this Circuit that have addressed this issue have found that the governing law has

20 | changed, and a plaintiff is not granted the presumption of irreparable harm upon a showing

21 | of likelihood of success on the merits. BoomerangIt, Inc. v. ID Armor, Inc., 2012 WL

22 | 2368466, at *4 (N.D. Cal. 2012) (citing cases). Similarly, this Court will not assume the

23 | existence of irreparable injury due to a showing of success on the merits. Flexible Lifeline

24 | Sys. and Perfect 10 suggest that trademark infringement actions should be analyzed under

25 | the standards for injunctive relief articulated by the Supreme Court in Winter and eBay.

26 | There appears to be no principled reason why the newly announced standard should not be

27 | applied in the trademark context.

28 |

A TRO may be issued without notice to the adverse party or its counsel *only if*: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65(b)(1) (emphasis added). Civil Local Rule 65-1(b) provides that "[u]nless relieved by order of a Judge for good cause shown, on or before the day of an ex parte motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party."

The United States Supreme Court has explained that the circumstances justifying the issuance of an ex parte temporary restraining order are extremely limited:

> The stringent restrictions imposed . . . by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-439 (internal citation omitted).

Consistent with the overriding concern articulated by the Supreme Court, the Ninth Circuit has stated that there are "very few" circumstances justifying the issuance of an ex parte TRO. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). For instance, notice may be excused where it "is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." Id. Or, notice may not be required where providing "notice to the defendant would render fruitless the further prosecution of the action" because the adverse party is likely to destroy evidence. Id.

In the context of trademark infringement, such cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing. Reno Air, 452 F.3d at 1131. To justify an ex parte proceeding on this ground, " 'the applicant must do

1   more than assert that the adverse party would dispose of evidence if given notice.' " Id.  A

2   plaintiff must show that defendants would disregard a court order and dispose of the goods

3   within the time it would take for a hearing and must support such assertions by showing

4   that the adverse party has a history of disposing of evidence or violating court orders or that

5   persons similar to the adverse party have such a history.  Id.

6           **2.    Analysis**

7           Plaintiff contends that an ex parte TRO should issue because it has suffered and will

8   continue to suffer irreparable harm as "Defendants are fraudulently selling and offering for

9   sale plush toys that are nearly identical to Plaintiff's copyrighted Angry Birds plush toys

10  and bearing the ANGRY BRIDS trademark." Pl.'s Mtn. at 7.[3]  Plaintiff argues that if a

11  TRO does not issue and Defendants are permitted to continue marketing substantially

12  similar plush animals, it will suffer irreparable harm in the form of lost business, goodwill

13  and reputation.  See id. at 17 -19.  Plaintiff also asserts that Defendants' products could pose

14  a potential public health risk as they may not be in compliance with numerous state and

15  federal laws, including laws regulating the material composition of products, because

16  Defendants' products only contain one label that indicates: "Made in China."  Id. at 18-19.

17  According to Plaintiff, while it stands to suffer a loss of its hard-earned sales, its goodwill

18  and consumer confidence that it may never be able to recoup, the risk involved in allowing

19  wide-scale distribution of a product for children ages three and up that has not been tested

20  for harmful or hazardous materials in accordance with United States laws is even more

21  "overwhelming."  Id. at 19.

22          In addition, Plaintiff contends that an ex parte TRO is appropriate because "[i]f

23  notice is given of [its] intent to seek a [TRO] and seizure order, Defendants can and will

24  easily 'unload' or hide their infringing goods and/or the means of making or obtaining such

25  goods, as well as hide or destroy their related business records, to avoid being caught with

26  _____

27          [3] Plaintiff also notes that consumers are continuing to be defrauded at the point-of-
    sale and/or post-sale as they are purchasing cheap knockoffs made of questionable materials
28  by unidentified manufacturers.  Pl.'s Mtn. at 7.

1   [and losing] these illicit items, and to further hide the extent of their infringing activities."

2   Pl.'s Mtn. at 7-8. According to Plaintiff, "the likelihood that the Defendants in this case

3   will destroy, conceal or transfer their infringing goods and records relating to these goods if

4   they are given notice of the relief requested . . . is evidenced by the fact that Defendants had

5   goods seized by U.S. Customs on at least **two** occasions in early July and have continued to

6   import and sell said goods thereafter." Id. at 7 (emphasis in original).

7         Additionally, Plaintiff asserts that Defendants have taken deliberate steps to conceal

8   their illegal business activities in an attempt to avoid further confiscation of their infringing

9   goods, including shipping goods to Defendant Park's home and keeping their business

10  doors closed to the general public. Pl.'s Mtn. at 7. Plaintiff also asserts that Defendants

11  conduct their business using multiple corporate entities, none of which are identified on the

12  counterfeit goods as required by United States law. Id. at 7.[4] According to Plaintiff, "it is

13  no stretch of the imagination that [Defendants] are incredibly likely to unload or conceal

14  these goods, and hide or destroy their related business records, if they are given notice of

15  the relief requested." Id. at 9.

16        Here, while Plaintiff has filed affidavits and evidence in support of its motion,

17  Plaintiff has failed to "clearly show that immediate and irreparable injury, loss, or damage

18  will result to the movant *before the adverse party can be heard in opposition,*" as required

19  for the issuance of an ex parte TRO. See Fed.R.Civ.P. 65(b) (emphasis added).[5]

20  Accordingly, because Plaintiff has not shown immediacy of harm, Plaintiff has not shown

21  good cause to be excused from the notice requirement set forth in Rule 65(b)(1). See Civ.

22  L.R. 65-1(b).

---

25        [4] Plaintiff, however, notes that Defendants do include their corporate information on
    generic plush products. Pl.'s Mtn. at 7.

27        [5] Plaintiff's attorneys have not certified in writing any efforts made to give notice to
    Defendants. See Drangel Decl.; Drey Decl. Instead, Plaintiff's counsel avers that notice
28  should not be required because there is a threat that Defendants might dispose of or hide
    critical evidence. See Drangel Decl. ¶¶ 20, 24.

1    As previously indicated, there are "very few circumstances justifying the issuance of

2    an ex parte TRO." See Reno Air, 452 F.3d at 1131 ("our entire jurisprudence runs counter

3    to the notion of court action taken before reasonable notice and an opportunity to be heard

4    has been granted to both sides of a dispute") (quoting Granny Goose Foods, 415 U.S. at

5    439). Courts have generally confined ex parte injunctive relief to two situations: (1) where

6    identity of the adverse party is unknown or because a known party cannot be located in

7    time for a hearing; or (2) a "narrow band of cases in which ex parte orders are proper

8    because notice to the defendant would render fruitless the further prosecution of the

9    action." Id.

10    Plaintiff has not cited, let alone satisfied, the Reno Air standard for issuing a TRO

11    under Rule 65(b)(1). Plaintiff does not argue that the identities of Defendants are unknown

12    or that they cannot be located in time for a hearing. Indeed, the complaint identifies each of

13    the Defendants and alleges that the corporate entities have their place of business at 4771

14    Arroyo Vista Blvd., Suites A & B, Livermore, CA 94551. Compl. ¶¶ 7-9. The complaint

15    also alleges that the individual defendant (i.e., Park) conducts business at 4771 Arroyo

16    Vista Blvd., Suites A & B, Livermore, CA 94551, and has a residence believed to be

17    located at 1589 Maple Leaf Drive, Pleasanton, CA 94588. Id. ¶ 10. Thus, it is clear that

18    Plaintiff knows the identities of Defendants and knows where they can be found.

19    Further, while Plaintiff argues that an ex parte TRO is appropriate because

20    Defendants are likely to destroy or hide evidence, Plaintiff has not submitted evidence

21    demonstrating that "notice to the defendant[s] would render fruitless the further prosecution

22    of the action." Reno Air, 452 F.3d at 1131. The evidence offered by Plaintiff in support of

23    its motion is insufficient to obtain ex parte relief. Plaintiff does not cite evidence showing

24    that Defendants would disregard a Court order and dispose of or hide the allegedly

25    infringing goods within the time it would take for a hearing.

26    For instance, Plaintiff offers no evidence that Defendants have failed to appear in

27    court when required or evidence suggesting that Defendants have a history of disposing of

28    evidence or that other individuals or entities similar (i.e., reasonably comparable) to

1   Defendants have a history of destroying evidence.  Instead, Plaintiff generally asserts that

2   "the propensity of infringers to conceal [infringing] items if they are given notice of an

3   application for a temporary restraining order or seizure is well-documented."  Pl.'s Mtn. at

4   8.  Though not specifically cited in connection with this issue, the Court notes that Plaintiff

5   has submitted a declaration from one of its attorneys wherein counsel avers that "[g]iven

6   Defendants' brazen illegal conduct as set forth in the moving affidavit, it is reasonable to

7   conclude that there is a threat that Defendants might dispose of the critical evidence unless

8   seized."  Drangel Decl. ¶ 20.  Counsel further avers that Plaintiff seeks "extraordinary relief

9   *ex parte* because [his] experience in investigating the Defendants and in other piracy cases

10  (nearly twenty (20) years experience as an intellectual property attorney) has confirmed

11  [his] suspicions that infringing parties often secrete or destroy records revealing the true

12  identity of their upstream supplier(s) if any and the volume of product manufactured

13  purchased or sold."  Id. ¶ 24.

14         The Court finds that Plaintiff's conclusory argument and the statements made by its

15  counsel are not evidence and certainly do not link the TRO application to Defendants.  See

16  Reno Air, 452 F.3d at 1132 (ex parte TRO not justified based on statement by counsel that

17  it is a common occurrence for infringers to leave the area and destroy of conceal infringing

18  merchandise at one time famous events such as the "Reno Air Races" and it is well-

19  recognized in the case law; stating that "[t]his conclusory statement from counsel hardly

20  qualified as evidence and certainly did not link the TRO application to [the defendant].").

21  The statements made by counsel, without more, are insufficient to justify the issuance of a

22  TRO without notice to Defendants.  See id. ("Were a single conclusory statement by

23  counsel about infringers sufficient to meet the dictates of Rule 65, then ex parte orders

24  without notice would be the norm and this practice would essentially gut Rule 65's notice

25  requirements.").

26         Nor is the Court persuaded that ex parte relief is appropriate based on Plaintiff's

27  contention that Defendants are likely to "destroy, conceal or transfer their infringing goods

28  and records relating to these goods if they are given notice" because they have continued to

1   import and sell infringing products after they had goods seized by the United States

2   Customs, and because they have taken deliberate steps to conceal their infringing business

3   activities, including shipping goods to Defendant Park's home and keeping their business

4   doors closed to the general public. See Pl.'s Mtn. at 7-9. Plaintiff did not present any

5   authority or persuasive legal analysis demonstrating that such conduct is sufficient to meet

6   the Reno Air standard for issuing a TRO under Rule 65(b)(1).

7          Finally, in addition to its evidentiary shortcomings, the Court finds that Plaintiff's

8   delay in requesting a TRO militates against its issuance. Parties spurred on by the threat of

9   or actual immediate irreparable harm file for TROs as quickly as possible to head or stave it

10  off. See, e.g., In re Excel Innovations, Inc., 502 F.3d 1086, 1091 (9th Cir. 2007) (zero days

11  delay); Lands Council v. Martin, 479 F.3d 636, 638-639 (9th Cir. 2007) (one day delay);

12  Earth Island Inst. v. U.S. Forest Serv., 442 F.3d 1147, 1155-1156 (9th Cir. 2006) (ten days

13  delay); Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S.D.A.,

14  415 F.3d 1078, 1089 (9th Cir. 2005) (six days delay); Duke Energy Trading and Mktg.,

15  L.L.C. v. Davis, 267 F.3d 1042, 1048 (9th Cir. 2001) (two days delay). Here, in stark

16  contrast, Plaintiff has been aware of the alleged counterfeiting activities since at least April

17  2012,[6] but did not file suit until October 29, 2012. See Compl.

18         In sum, because of Plaintiff's delay and because it has failed to meet the Reno Air

19  standard for issuing a TRO under Rule 65(b)(1), Plaintiff's ex parte motion for a TRO is

20  DENIED. Plaintiff has not clearly shown that it will suffer immediate and irreparable

21  injury, loss, or damage before the adverse party can be heard in opposition. Specifically,

22

23         [6] In July 2011, Plaintiff's counsel was retained by Plaintiff to undertake a
    comprehensive anti-counterfeiting program in the United States. Drangel Decl. ¶ 3.
24  Plaintiff's counsel subsequently retained IC to investigate Defendant RPI. Buckner Decl.
    ¶¶ 1-2. On or about March 29, 2012, an investigator with IC ordered certain Angry Birds
25  from RPI over the phone. Id. ¶ 3. On April 4, 2012, IC received eight Angry Birds. Id. ¶¶
    4-5. Samples of these products were sent to Plaintiff's counsel on or about April 4, 2012.
26  Id. ¶ 7. Following a subsequent purchase of Angry Birds from RPI at 4771 Arroyo Vista
    Blvd., Suite B, Livermore, CA 94551, samples of the purchased products were sent to
27  Plaintiff's counsel on June 28, 2012. Id. ¶¶ 8, 11, 15-16. In early July 2012, Plaintiff's
    counsel was advised by United States Customs that Defendants RPI and WS & S had
28  imported counterfeit ANGRY BIRDS plush products. Drangel Decl. ¶ 5, Exh A.

1   Plaintiff failed to demonstrate that advising Defendants of its TRO application and

2   providing them with an opportunity to be heard would "render fruitless the further

3   prosecution of the action." Reno Air, 452 F.3d at 1131.[7]

4   **B.      Ex Parte Seizure Order**

5   Plaintiff's motion requests the issuance of an ex parte seizure order directing the

6   United States Marshal or other law enforcement to "seize and impound any and all

7   infringing and unauthorized merchandise that infringe Plaintiff's Copyrights and Marks, the

8   means of making the infringing merchandise, and the business records relating thereto."

9   Pl.'s Mtn. at 1-2. However, Plaintiff has failed to provide authority and analysis

10  demonstrating that such relief is appropriate. Indeed, Plaintiff's motion papers do not

11  contain a separate section devoted to establishing that an ex parte seizure order is

12  warranted.

13  While Plaintiff references 17 U.S.C. § 503(a)[8] in its motion papers in connection

14  with arguments regarding the appropriate bond amount and expedited discovery, Plaintiff

15  does not specifically argue, let alone establish, that an ex parte seizure order is appropriate

16  under § 503(a). Thus, to the extent that Plaintiff is seeking an ex parte seizure order under

17  § 503,[9] the Court finds that such request is unsupported, and therefore lacks merit. See

18

19      [7] The Court notes that Plaintiff has done an extensive investigation and secured
    numerous examples of the Defendants' infringing materials. See e.g., Buckner Decl. ¶¶ 1-
20  29. These examples are attached to the complaint as well as set forth in and attached to
    declarations submitted by Plaintiff in support of the instant motion. See Compl., Exh. D;
21  Drangel Decl., Exh. G; Buckner Decl. ¶¶ 4, 12, 19-20, 22, 24, 27; Greenfield Decl., Exh. B.
    Thus, even if Defendants were to destroy or hide allegedly infringing materials, Plaintiff
22  has preserved evidence of the infringement and has identified witnesses to testify on its
    behalf.

23
        [8] Section 503(a)(1) provides that "[a]t any time while an action under this title is
24  pending, the court may order the impounding, on such terms as it may deem reasonable . .
    ." 17 U.S.C. § 503(a)(1). "The relevant provisions of paragraphs (2) through (11) of
25  section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any
    impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte
26  application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil
    Procedure." 17 U.S.C. § 503(a)(3).

27
        [9] According to Plaintiff's proposed order, it seeks an ex parte seizure order under 17
28  U.S.C. § 503(a).

- 15 -

1   Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial

2   system relies on the advocates to inform the discussion and raise the issues to the court.").

3        Moreover, the Court finds that an ex parte seizure order is not warranted for the

4   same reasons that an ex parte TRO is not warranted.  To the extent Plaintiff suggests that an

5   ex parte seizure order is warranted because Defendants possess counterfeit goods, the Court

6   rejects this suggestion.  The mere allegation that a defendant is engaged in counterfeiting,

7   and thus has an incentive to destroy evidence, without more, is insufficient to support

8   granting an ex parte request for a seizure order.  See Lorillard Tobacco Co. v. Bisan Food

9   Corp., 377 F.3d 313, 321-322 (3d Cir. 2004).  Were courts to hold otherwise, ex parte

10  seizure orders would become automatic in all counterfeiting cases.  Id.[10]  Accordingly, for

11  the reasons stated above, Plaintiff's request for an ex parte seizure order is DENIED.

12      **C.**    **Substitute Custodian Order**

13       Plaintiff's motion requests that the Court "appoint a substitute custodian with whom

14  the seized goods and business records may be deposited in place of the Defendants."  Pl.'s

15  Mtn. at 21.  However, because the Court denied Plaintiff's request for an ex parte seizure

16  order, Plaintiff's request for a substitute custodian order is DENIED.

17      **D.**    **Expedited Discovery**

18       Rule 26(d) of the Federal Rules of Civil Procedure generally prohibits a party from

19  seeking discovery from any source before the parties have conferred as required by Rule

20  26(f).[11]  See Fed.R.Civ.P. 26(d).  In the Ninth Circuit, courts use the "good cause" standard

21

22      [10] In Lorillard, the Third Circuit noted that "incorporated businesses with inventories, assets, and a fixed physical presence-have much to lose if held in contempt."

23  Lorillard, 377 F.3d at 321. In contrast, itinerant street vendors with few assets have little to fear from the Court's contempt powers.  Id.  Here, the evidence before the Court indicates that Plaintiff seeks to seize the inventory of incorporated businesses with an inventory,

24  assets, and a fixed physical presence.  See Compl. ¶¶ 7-10; Buckner Decl. ¶¶ 9-10; Drangel Decl. ¶ 19. Ex parte seizure orders against established ongoing businesses are disfavored.

25  See Wangson Biotechnology Group, Inc. v. Tan Tan Trading Co., Inc., 2008 WL 4239155, *5 (N.D. Cal. 2008).

26

27      [11] Rule 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from

28  initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."

1   to determine whether discovery should be allowed to proceed prior to a Rule 26(f)

2   conference. <u>UMG Recordings, Inc. v. Doe</u>, 2008 WL 4104214, *4 (N.D. Cal. 2008)

3   (Armstrong, J.). Good cause may be found where the need for expedited discovery, in

4   consideration of the administration of justice, outweighs the prejudice to the responding

5   party. <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002);

6   <u>UMG Recordings</u>, 2008 WL 4104214, at *4 & n. 3 (listing cases from Ninth and other

7   circuits citing <u>Semitool</u> ). While "courts have recognized that good cause is frequently

8   found in cases involving claims of infringement and unfair competition," expedited

9   discovery is not appropriate in every case. <u>Semitool</u>, 208 F.R.D. at 276-277.

10       In considering whether good cause exists, factors courts may consider include: (1)

11  whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3)

12  the purpose for requesting the expedited discovery; (4) the burden on the defendants to

13  comply with the requests; and (5) how far in advance of the typical discovery process the

14  request was made. <u>Am. Legalnet, Inc. v. Davis</u>, 673 F.Supp.2d 1063, 1067 (C.D. Cal.

15  2009). The party seeking expedited discovery in advance of the Rule 26(f) conference has

16  the burden of showing good cause for the requested departure from usual discovery

17  procedures. <u>Id.</u> at 1066.

18       Here, Plaintiff requests the Court allow it to immediately depose the Defendants and

19  to immediately propound requests for production of documents and interrogatories with a

20  command that responses be served within three (3) days. Pl.'s Mtn. at 23. According to

21  Plaintiff, expedited discovery is necessary to ascertain where the proceeds from the

22  counterfeiting activities have gone so that it can "amend the complaint and temporary

23  restraining order and/or preliminary injunction to include other entities involved in

24  Defendants' counterfeiting scheme." <u>Id.</u> Plaintiff also argues that expedited discovery is

25  necessary to learn the scope of Defendants' distribution of the counterfeit products so that it

26  can gain a full and accurate picture of Defendants' infringing activities and ensure that these

27  activities will be contained. <u>Id.</u> Finally, Plaintiff argues that expedited discovery is

28

1 | appropriate because Plaintiff may lose the opportunity for "meaningful discovery" as

2 | Defendants have engaged in "deceptive practices." Id. at 24.

3 |    The Court finds that Plaintiff has failed to demonstrate the requisite good cause to

4 | justify expedited discovery. Plaintiff has not clearly shown that the information it seeks is

5 | needed on an expedited basis to obtain a preliminary injunction. Plaintiff has ascertained

6 | the identities of the entities and the individual allegedly responsible for the conduct it seeks

7 | to enjoin and has not articulated any specific missing evidence essential for injunctive

8 | relief. Plaintiff, for example, has made no showing that a reasonable basis exists to

9 | conclude that there are other individuals or entities involved in the counterfeiting scheme.

10 | Nor has Plaintiff shown that expedited discovery is warranted on the basis that it "may"

11 | lose the opportunity for meaningful discovery due to Defendants' "deceptive practices." As

12 | discussed above, Plaintiff has not established that Defendants are predisposed to destroy or

13 | hide evidence.

14 |    Furthermore, Plaintiff has not clearly shown that the discovery requested is narrowly

15 | tailored to obtain information relevant to a preliminary injunction determination. Contrary

16 | to Plaintiff's contention, it has not "precisely defined and carefully limited" the discovery

17 | requested to include only what is "essential for the preliminary injunction." In support of

18 | its contention, Plaintiff directs the Court to its proposed order. However, that order merely

19 | indicates that "Defendants shall produce documents responsive to Plaintiff's First Requests

20 | for the Production of Documents" and "Defendants, individually or through Fed.R.Civ.P.

21 | 30(b)(6) representatives, shall appear for deposition upon three (3) days notice from

22 | Plaintiff." Without a copy of the proposed discovery requests, the Court cannot determine

23 | whether the requests are narrowly tailored such that they would not present an undue

24 | burden on Defendants at this stage of the proceedings.[12] In light of Plaintiff's showing, the

25 |

26 |   [12] The Court does not dispute the potential relevance of the depositions to the merits

27 | of the overall case. However, Plaintiff has not shown that the depositions are limited to those matters specifically related to the determination of the preliminary injunction. Nor has Plaintiff shown that the document requests are limited to eliciting evidence relevant to

28 | the issuance of a preliminary injunction.

Court is unwilling to burden Defendants with expedited discovery that may be nothing more than superfluous evidence in establishing the elements necessary to obtain a preliminary injunction. While Plaintiff may ultimately be entitled to much of the discovery it seeks later in this case, it has failed to demonstrate that expedited discovery is appropriate at this juncture.

Accordingly, for the reasons stated above, Plaintiff's request for expedited discovery is DENIED without prejudice. The Court will reconsider this issue, after Defendants have had the opportunity to brief this issue and the Court has ruled on Plaintiff's request for a preliminary injunction.

**E.** **Request for an OSC Why A Preliminary Injunction Should Not Issue**

Although Plaintiff is not entitled to an ex parte TRO, an ex parte seizure order, or expedited discovery, given the declarations submitted by Plaintiff and the evidence attached thereto, which raise serious allegations of counterfeiting, the Court will issue an evidence preservation order and set an expedited briefing schedule for a hearing regarding Plaintiff's request for a preliminary injunction. Accordingly, Plaintiff's request for an OSC why a preliminary injunction should not issue is GRANTED.

**III.** **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's request for an ex parte TRO is DENIED.

2.  Plaintiff's request for an ex parte seizure order is DENIED.

3.  Plaintiff's request for a substitute custodian order is DENIED.

4.  Plaintiff's request for an expedited discovery order is DENIED without prejudice.

5.  Plaintiff's request for an OSC why a preliminary injunction should not issue is GRANTED. The Court will construe Plaintiff's ex parte motion for a TRO as a motion for preliminary injunction. Plaintiff shall immediately hand-serve Defendants with the summons, complaint, and all other documents filed in this case, including this Order. Plaintiff shall effect service on Defendant within two days of the date this Order is filed.

1   Plaintiff shall file proofs of service with the Court by Friday November 9, 2012.

2   Defendants may file any opposition to the requested preliminary injunction by November

3   13, 2012.  Plaintiff may file a reply by November 15, 2012.  If Plaintiff does not hand-serve

4   the papers as directed, it may instead notice a motion for a preliminary injunction for the

5   next available hearing date.  The Court cautions Defendants that the Court will construe the

6   failure to file an opposition as a consent to the granting of the motion.

7       6.      A hearing on Plaintiff's motion for preliminary injunction is scheduled for

8   November 21, 2012 at 1:00 p.m in Courtroom 1, 4th floor, United States District

9   Courthouse, 1301 Clay St., 4th Fl., Oakland, CA 94612.  In accordance with Civil Local

10  Rule 7-1(b), the Court may resolve the motion without a hearing.  The parties are advised to

11  check the Court's website to determine whether an appearance on the motion is required.

12      7.      The Court ORDERS Defendants Royal Plush Toys, Inc., Western Sales and

13  Services Inc., Royal Trade Int'l Inc., and Jong K. Park (i.e., Defendants) to take reasonable

14  steps to preserve any and all records or documents, as defined in Federal Rule of Civil

15  Procedure 34(a)(1)(A), including but not limited to sales and customer journals, notebooks,

16  bank records, receipts, recordings, telephone records, voice mails, e-mails, or

17  correspondence, regardless of storage or retention medium or method, relating to the

18  manufacture, distribution, promotion, sale, offer to sale, purchase, offer to purchase,

19  transfer, shipping, or transportation of the following products, in their possession, custody,

20  or control now or that come into their possession, custody, or control hereafter, whether

21  apparently legitimate or counterfeit:  products that bear Plaintiff's ANGRY BIRDS and/or

22   trademarks as set forth in  Exhibit A to the complaint or products that are

23  substantially similar to Plaintiff's Angry Birds plush toy products as set forth in Exhibits C

24  & D of the complaint   The Court further ORDERS Defendants to take reasonable steps to

25  preserve products that now or hereafter come into their possession, custody, or control,

26  whether apparently legitimate or counterfeit:  that bear Plaintiff's ANGRY BIRDS and/or

27

28   trademarks as set forth in  Exhibit A to the complaint or products that are

- 20 -

1 | substantially similar to Plaintiff's Angry Birds plush toy products as set forth in Exhibits C
2 | & D of the complaint

3 |      8.     The Clerk shall unseal the file.

4 |      IT IS SO ORDERED.

5 | Dated:  11/6/12

6 |                                SAUNDRA BROWN ARMSTRONG
                               United States District Judge