UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROVIO ENTERTAINMENT LTD<br>fka ROVIO MOBILE OY,<br><br>       Plaintiff,<br><br>  vs.<br><br>ROYAL PLUSH TOYS, INC., WESTERN<br>SALES AND SERVICES INC., ROYAL<br>TRADE INT'L INC., JONG K PARK,<br>and DOES 1-10, inclusive,<br><br>      Defendants. | Case No:  C 12-5543  SBA<br><br>**ORDER GRANTING MOTION<br>FOR PRELIMINARY<br>INJUNCTION AND MOTION<br>TO CONDUCT EXPEDITED<br>DISCOVERY** |

On October 29, 2012, Rovio Entertainment Ltd. fka Rovio Mobile Oy ("Plaintiff") brought the instant copyright and trademark infringement action against Defendants Royal Plush Toys, Inc. ("RPI"), Western Sales and Services Inc. ("WS & S"), Royal Trade Int'l Inc. ("RTI"), and Jong K. Park ("Park") (collectively, "Defendants").  Plaintiff is a Finland-based company that developed the puzzle video game Angry Birds.  Plaintiff alleges that Defendants are intentionally and willfully selling infringing and unauthorized knockoff plush toys that are nearly identical to Plaintiff's Angry Birds plush toys in violation of Plaintiff's copyright registrations and ANGRY BIRDS trademarks.  Plaintiff has sued Defendants for copyright infringement under 17 U.S.C. § 501(a), trademark counterfeiting under 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c), trademark infringement under 15 U.S.C. § 1114, false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a), unfair competition under California common law, and unjust enrichment.  See Compl., Dkt. 1.

The parties are presently before the Court on Plaintiff's motion for a preliminary injunction and to conduct expedited discovery.  None of the Defendants has filed an

opposition.  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS the motion for a preliminary injunction and GRANTS the motion to conduct expedited discovery.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  <u>See</u> Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.    <u>BACKGROUND</u>

### A.    **Factual Background**

Angry Birds is a puzzle video game developed by Plaintiff.  Compl. ¶ 18.  The game was first released for Apple, Inc's iOS in December 2009.  <u>Id.</u>  In the game, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield.  <u>Id.</u> ¶ 19.  As players advance through the game, new birds appear, some with special abilities that can be activated by the player.  <u>Id.</u>

The Angry Birds game has been downloaded over one billion times across all platforms, including both regular and special editions.  Compl. ¶ 20.  Players log more than 1 million hours of game time each day on the iOS version of the game, 3.33 million hours per day across all platforms, and there are more than 40 million active monthly users.  <u>Id.</u> ¶ 21.  The game has been called "one of the most mainstream games out right now," "one of the great runaway hits of 2010," and "the largest mobile app success the world has seen so far."  <u>Id.</u> ¶ 20.  The Angry Birds game has received several awards, including the "Best Game App" and "App of the Year" at the 2011 "UK Appy Awards, and "Best Game for Handheld Devices" at the 15th edition of the "Webby Awards."  <u>Id.</u> ¶ 22.

Angry Birds' popularity led to versions of Angry Birds being created for personal computers and gaming consoles, a market for merchandise featuring its characters, and even long-term plans for a feature film or television series.  Compl. ¶ 23.  Plaintiff has an extensive world-wide licensing program for merchandise featuring its characters.  <u>Id.</u> ¶ 24. The most popular items have been t-shirts, plush toys and cell phone accessories ("Products").  <u>Id.</u>  Of these items, Plaintiff's most popular product is its collection of round plush Angry Birds toys (collectively, "the Angry Birds Plush Line").  Greenfield Decl. ¶ 6,

Exh. A.  These round plush Angry Birds toys are sold in various sizes and styles and some include sound.  Id.

Plaintiff alleges that it has gained significant common law trademark and other rights in its trademarks and Products through its use, advertising and promotion.  Compl. ¶ 25.  Plaintiff has also obtained federal trademark and copyright registrations.  Id.  Plaintiff is the owner of the United States Trademark Registration No. 3,976,576 for ANGRY BIRDS for a wide variety of goods in Classes 9, 16, 28 and 41 and United States Trademark No. 3,988,064 for  for a wide variety of goods in Classes 9, 16, 28 and 41 (the "Marks").  Id. ¶ 26, Exh. A.

Plaintiff also owns copyrights in and related to the Products.  Compl. ¶ 27. Plaintiff's copyrights protect the various proprietary characters originated in the Angry Birds game and extended through its line of Products.  Id.  The line is updated from time to time to add new designs and products.  Id.  Plaintiff owns several United States Copyright Registrations relating to its Products, including, among others, the following certificates of registration : VA1778702, VA1778705, VA1778703, VA1776995, VA1776992, VA1777195, as well as numerous common law copyrights (collectively, "Copyright Works").  Id. ¶ 28, Exh. B.

In summer 2010, Plaintiff granted Commonwealth Toy & Novelty Co., Inc. ("Commonwealth") a United States license (and elsewhere), to market, manufacture, distribute and sell Angry Birds plush, key chains, balls, PVC figures, bean bags, Christmas stockings, seasonal Summer goods, banners and flags, lanyards, magnets, plush hats, snow globes, and drinkware.  Compl. ¶ 30.  Currently, Commonwealth's most popular product is the Angry Birds Plush Line.  Id. ¶ 32, Exh. C.  Commonwealth sells the Angry Birds Plush Line to retailers such as Toys R Us, Kmart, Walmart, Shopko, Hallmark, Build A Bear, Pamida, Walgreens, CVS, Justice, Claires, Hot Topic, Transworld, and Spencer Gifts, among others. Id. ¶ 33.  Commonwealth also sells to over one thousand (1,000) other independent retailers in the United States.  Id.  The Angry Bird Plush Line is also sold (given away as prizes) in

amusement parks such as Universal Studios, Knotts Berry Farm, Cedar Point, Dorney Park, Hershey Park, Six Flags, Sea World, and Lego Land.  Id.

The Angry Birds Plush Line is a very substantial part of both Plaintiff's and Commonwealth's respective businesses.  Greenfield Decl. ¶ 17.  Since late 2010, Commonwealth has sold over thirty million units of the Angry Birds Plush Line in the United States alone.  Id. ¶ 9.

According to Plaintiff, its games and Products have become targets for unscrupulous individuals and entities that deal in infringing products and services.  Compl. ¶¶ 35-36. The actions of these individuals and entities include manufacturing, copying, exporting, importing, advertising, promoting, selling, and distributing infringing and otherwise unauthorized products.  Id. ¶ 36.  Because Plaintiff's Copyright Works and Marks are vital to its business, Plaintiff actively polices and enforces its intellectual property rights.  Hed Decl. ¶ 11.

Plaintiff and Commonwealth have both discovered that large quantities of pirated copies of the Angry Birds Plush Line are being sold throughout the United States. Greenfield Decl. ¶ 10.  Specifically, Plaintiff and Commonwealth have recently discovered that the Defendants are selling infringing copies of the Angry Birds Plush Line from their business location at 4771 Arroyo Vista Blvd., Suites A & B, Livermore, CA 94551.[1]  See Id.; Drangel Decl. ¶¶ 4-16, Exhs. A-G; Buckner Decl. ¶¶ 2-5, 7-29.[2]  Plaintiff believes that Defendants also sell their infringing products to flea market vendors, kiosk owners, crane operators, and discount chains at a substantial discount.  Greenfield Decl. ¶ 11.

Following the discovery of Defendants' activities, Plaintiff directed a licensed investigative firm, Investigative Consultants, Inc. ("IC"), to make purchases of Defendants'

---

[1] According to the investigative firm retained by Plaintiff's counsel, 4771 Arroyo Vista Blvd., Suite B, Livermore, CA 94551 is a tan building with suites which house multiple businesses.  Buckner Decl. ¶¶ 8-9.  The entrance to the location has black tinted glass windows and a black tinted glass door.  Id. ¶ 9.  There is no visible sign outside the location that identifies it as RPI.  Id.

[2] Defendants' infringing products have been seized by United States Customs on two occasions in June and July 2012.  See Drangel Decl. ¶¶ 5-6, Exhs. A-B.

goods.  See Buckner Decl. ¶¶ 2-29; Drangel Decl. ¶¶ 12-15, Exh. G.  The goods purchased were examined by Plaintiff's counsel who confirmed that they violate both Plaintiff's copyright and trademark rights.  Drangel Decl. ¶¶ 15-16, Exh. G; Compl. ¶ 39.  According to Plaintiff, a side-by-side comparison of the parties' respective goods reveals that the Defendants' knockoff products are nearly identical to Plaintiff's authentic Angry Bird plush products with only minor variations that no ordinary consumer could recognize.  Greenfield Decl. ¶ 12, Exh. B; see also Drangel Decl. ¶ 15, Exh. G; Compl. ¶ 38.  Many of the products bear labels and hang tags bearing Plaintiff's ANGRY BIRDS and/or  Marks. Compl. ¶ 38; see also Drangel ¶ 15, Exh. G.

Plaintiff alleges that by these sales and their other dealings in infringing products, including importing, advertising, displaying, distributing, selling and/or offering to sell infringing products, Defendants have violated Plaintiff's exclusive rights in its Copyright Works and Marks.  Compl. ¶ 40.  Plaintiff also alleges that Defendants used images and designs that are substantially similar to, identical to, and/or constitute infringement of, Plaintiff's intellectual property to confuse consumers and aid in the promotion and sales of their unauthorized products.  Id.  Plaintiff further alleges that Defendants had knowledge of Plaintiff's ownership of the Copyright Works and Marks prior to the actions alleged in the complaint and adopted them in bad faith.  Id. ¶ 41.  Neither Plaintiff nor any authorized agents have consented to Defendants use of any of Plaintiff's intellectual property, including its Copyright Works and Marks.  Id.

According to Plaintiff, Defendants have willfully and in bad faith infringed its Copyright Works and Marks, committed unfair competition, and unfairly profited from such activity at Plaintiff's expense.  Compl. ¶ 43.  Plaintiff alleges that Defendants' conduct has caused irreparable harm to it, and, unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.  Id.  Specifically, Plaintiff claims that Defendants' intentional, deceitful misconduct not only results in lost profits to Plaintiff and Commonwealth, but it destroys the inherent value of Plaintiff's Copyright Works and Marks, and it impairs the

Plaintiff's reputation for providing quality products.  Moreover, it dilutes the Plaintiff's brand and goodwill, and it negatively affects the Plaintiff's relationships with current customers (both retail sellers and ultimate consumers) and its ability to attract new customers.  Pl.'s Mtn. at 6 (citing Greenfield Decl. ¶¶ 13-18).  Plaintiff also claims that Defendants' conduct harms consumers by "duping" them into thinking they are purchasing genuine Angry Birds plush toys made of high quality materials and in accordance with United States consumer product safety laws when, in reality, they are purchasing cheap knockoffs made of questionable materials by unidentified manufacturers.  Pl.'s Mtn. at 6 (citing Greenfield Decl. ¶¶ 19-23, Exhs. C-E; Drangel Decl. ¶¶ 14-16, Exh. G).

### B.   Procedural History

On October 29, 2012, Plaintiff commenced the instant action and filed an ex parte motion for a temporary restraining order ("TRO"), an order to show cause ("OSC") why a preliminary injunction should not issue, a seizure order, a substitute custodian order, and an expedited discovery order.  Dkt. 1.  On November 6, 2012, the Court issued an Order denying the motion for an ex parte TRO, granting the motion for an OSC why a preliminary injunction should not issue, denying the motion for a seizure order, denying the motion for a substitute custodian order, and denying without prejudice the motion for expedited discovery.  Dkt. 18.  The Court construed Plaintiff's ex parte motion for a TRO as a motion for preliminary injunction and ordered Plaintiff to immediately hand-serve the Defendants with the summons, complaint, and all other documents filed in this case, including the Court's November 6, 2012 Order.  Id.  The Court also ordered Plaintiff to effect service on Defendants within two days of November 6, 2012, and to file proofs of service with the Court by November 9, 2012.  Id.

The Court scheduled a hearing on Plaintiff's motion for preliminary injunction for November 21, 2012.  Dkt. 18.  Defendants were directed to file any opposition to the requested preliminary injunction by November 13, 2012.  Id.  Plaintiff was permitted to file a reply by November 15, 2012.  Id.  The Court cautioned Defendants that the Court will construe the failure to file an opposition as a consent to the granting of the motion.  Id.

1    On November 9, 2012, Plaintiff filed proofs of service.  Dkt. 20-23.  To date, no

2    Defendant has filed an opposition to Plaintiff's motion for a preliminary injunction.  On

3    November 15, 2012, Plaintiff filed a reply brief.  Dkt. 24.

4    **II.    DISCUSSION**

5        **A.    Legal Standard**

6        To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood

7    of success on the merits; (2) a likelihood of irreparable harm to the moving party in the

8    absence of preliminary relief; (3) that the balance of equities tips in favor of the moving

9    party; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def.

10   Council, Inc., 555 U.S. 7, 20 (2008).  The court may apply a sliding scale test, under which

11   "the elements of the preliminary injunction test are balanced, so that a stronger showing of

12   one element may offset a weaker showing of another."  Alliance for the Wild Rockies v.

13   Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  A restraining order is an "extraordinary

14   remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

15   relief."  Winter, 555 U.S. at 22.

16       Previously, courts presumed the likelihood of irreparable harm when a plaintiff

17   demonstrated a likelihood of success on a copyright or trademark infringement claim.  See

18   Brookfield Communs., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th

19   Cir. 1999); Apple Computer, Inc. v. Formula Intern. Inc., 725 F.2d 521, 525 (9th Cir.

20   1984).  However, the governing law has changed in light of Winter and eBay Inc. v.

21   MercExchange, L.L.C., 547 U.S. 388, 393 (2006) (disapproving the use of "categorical"

22   rules regarding irreparable harm in patent infringement cases, concluding that such a rule

23   "cannot be squared with the principles of equity adopted by Congress.").

24       Now, presuming irreparable harm is impermissible when a plaintiff demonstrates a

25   likelihood of success on a copyright infringement claim.  See Flexible Lifeline Sys., Inc. v.

26   Precision Lift, Inc., 654 F.3d 989, 994, 998 (9th Cir. 2011) (applying e-Bay's rule to a

27   request for injunctive relief in a copyright infringement claim and reversing the Circuit's

28   "long-standing precedent finding a plaintiff entitled to a presumption of irreparable harm on

a showing of likelihood of success on the merits in a copyright infringement case."); <u>Perfect 10, Inc. v. Google, Inc.</u>, 653 F.3d 976, 979-981 (9th Cir. 2011) (concluding that the Ninth Circuit's longstanding rule that a showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm, "is clearly irreconcilable with the reasoning of the Court's decision in <u>eBay</u> and has therefore been "effectively overruled.").

The continuing vitality of the presumption in trademark infringement cases is not clear.  After <u>Winter</u> and <u>eBay</u>, the Ninth Circuit has upheld a district court's application of its prior precedent that, "[i]n a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.' " <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 877 (9th Cir. 2009).  However, another Ninth Circuit panel, in the context of a copyright infringement action, has stated that "the summary treatment of the presumption" in <u>Marlyn Nutraceuticals</u> "without consideration of the effect of <u>eBay</u> and <u>Winter</u> does not . . . constitute an affirmation of the presumption's continued vitality." <u>Flexible Lifeline Sys.</u>, 654 F.3d at 997.

While the Ninth Circuit has not yet directly addressed the effect of <u>Winter</u> and <u>eBay</u> upon the presumption of irreparable harm in the trademark infringement context, district courts in this Circuit that have addressed this issue have found that the governing law has changed, and a plaintiff is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits.  <u>BoomerangIt, Inc. v. ID Armor, Inc.</u>, 2012 WL 2368466, at *4 (N.D. Cal. 2012) (citing cases).  Similarly, this Court will not presume the existence of irreparable injury premised solely on a showing of success on the merits. <u>Flexible Lifeline Sys.</u> and <u>Perfect 10</u> suggest that trademark infringement actions should be analyzed under the standards for injunctive relief articulated by the Supreme Court in <u>Winter</u> and <u>eBay</u>.  No principled reason has been advanced which persuades the Court that the newly announced standard should not be applied in the trademark context.

///

///

**B.      Motion for Preliminary Injunction**

Plaintiff seeks a preliminary injunction under the Copyright Act and the Lanham Act prohibiting Defendants from, among other things, manufacturing, distributing or selling goods that infringe Plaintiff's exclusive rights in its Copyright Works and Marks.  Pl.'s Mtn. at 1.  No Defendant has filed an opposition to the motion, which the Court construes as their consent to the granting of the motion.  Notwithstanding Defendants' consent to the granting of the motion, the Court finds that Plaintiff has demonstrated that injunctive relief is appropriate under <u>Winter</u>, for the reasons set forth below.

**1.      Likelihood of Success on the Merits**

**a.      Copyright Act**

To prevail on a copyright infringement claim, a plaintiff must show: (1) ownership of a valid copyright; and (2) copying of the original elements of the protected work.  <u>See Feist Publications v. Rural Telephone Service Co.</u>, 499 U.S. 340, 361 (1991); <u>L.A. Printex Industries, Inc. v. Aeropostale, Inc.</u>, 676 F.3d 841, 846 (9th Cir. 2012).  The word "copying" is shorthand for the infringing of any of the copyright owner's exclusive rights, described in section 106 of the Copyright Act.  <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1085 n. 3 (9th Cir. 1989).  Section 106 of the Copyright Act provides, among other things, that the owner of a copyright has the exclusive rights to: (1) "reproduce the copyrighted work in copies or phonorecords"; (2) "prepare derivative works based upon the copyrighted work"; and (3) "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106.  The copyright owner also has the exclusive rights to authorize others to engage in the foregoing conduct.  <u>See</u> <u>id.</u>

To demonstrate ownership of valid copyrights, Plaintiff has submitted Certificates of Copyright Registrations relating to its Angry Birds Plush Line:  VA1778702, VA1778705,

VA1778703, VA1776995, VA1776992, VA1777195.  Compl. Exh. B; Hed Decl., Exh. O.[3]
A copyright registration certificate is prima facie evidence of copyright ownership.  See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); Ets–Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1075-1076 (9th Cir. 2000).  "A certificate of copyright registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights."  Ets–Hokin, 225 F.3d at 1076.  Here, because Defendants do not challenge the validity of Plaintiff's registered copyrights, and because there is no contrary evidence in the record, the Court finds that Plaintiff has shown that it is likely to prove that it is the owner of valid copyrights in the Angry Birds plush toy in several formats, the mighty eagle plush toy, and the helmet pig, moustache pig, and green pig plush toys.

Having shown that it will likely be able to prove ownership of valid copyrights, Plaintiff must next demonstrate that Defendants "copied" original elements of the protected works.  Because direct evidence of copying is generally not available in most cases, Plaintiff can establish copying by showing that the Defendants had access to the copyrighted work and that the parties' works are substantially similar.  L.A. Printex Industries, 676 F.3d at 846.  "Proof of access requires 'an opportunity to view or to copy plaintiff's work.' "  Id. (quoting Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)).  "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."  L.A. Printex Industries, 676 F.3d at 846 (quoting Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009)).  Absent direct evidence of access, a plaintiff can prove

---

[3] Specifically, Plaintiff has submitted Certificates of Registration for Angry Birds plush toys in several formats: VA1778702, VA1778705, VA1778703, and VA1777195.  Compl. Exh. B; Hed Decl., Exh. O.  In addition, Plaintiff has submitted a Certificate of Registration for the mighty eagle plush toy: VA1776992.  Id.  Finally, Plaintiff has submitted a Certificate of Registration for the helmet pig, moustache pig, and green pig plush toys: VA1776995.  Id.  According to the information provided on the Certificates of Registration, the Certificates were made within five years after first publication.  Id.

access using circumstantial evidence of either (1) a "chain of events" linking the plaintiff's work and the defendant's access, or (2) "widespread dissemination" of the plaintiff's work. L.A. Printex Industries, 676 F.3d at 846-847.

Plaintiff seeks to prove access by showing that its Copyright Works have been widely disseminated.  Pl.'s Mtn. at 11.  Specifically, according to Plaintiff, "[g]iven the vast public exposure of Plaintiff's Angry Birds Products in the United States during the past two years, it is indisputable that the Plaintiff's infringed work has been widely disseminated." Id.  In support of its position, Plaintiff cites to evidence showing, among other things, that the Angry Birds game has been downloaded 1 billion times across all platforms since its release for Apple, Inc.'s iOS in December 2009, Hed Decl. ¶¶ 2-3, Exhs. A-B, there are more than 40 million active monthly users of the game, id. ¶ 3, Exh. D, over thirty (30) million units of the Angry Birds Plush Line have been sold in the United States since late 2010, Greenfield Decl. ¶ 9, and that the game has garnered recognition from the press and has been nominated for and won a number of industry awards, Hed Decl. ¶¶ 4-5, Exhs. E, G, L, M.  Plaintiff has also submitted evidence showing that RPI claims on its website that it has over fifteen years of experience as a world leader in manufacturing plush toys and creating new designs, and that RPI is one of the major distributors of plush toys in the United States with 500 designs of plush toys in various sizes.  See Drangel Decl. ¶¶ 18-19, Exh. H.

The Court finds that Plaintiff has presented evidence demonstrating that its Angry Birds game and Angry Birds Plush Line have been widely disseminated such that there is a "reasonable possibility" that Defendants had the chance to view Plaintiff's work. Defendants, for their part, do not dispute that they had access to the Angry Birds game or the Angry Birds Plush Line.  In light of the Court's determination that Plaintiff has shown access circumstantially by widespread dissemination of its products, the Court need not reach the question of whether there is a "chain of events" linking the Plaintiff's Copyright Works and the Defendants' access to the works.

1    Having shown that it will likely be able to prove access, Plaintiff must next show

2  that it will likely prove that Defendants' plush toys are substantially similar to Plaintiff's

3  plush toys.  To determine whether two works are substantially similar, the Ninth Circuit

4  utilizes a two-part test consisting of extrinsic and intrinsic components.  L.A. Printex

5  Industries, 676 F.3d at 848.  The "extrinsic test" is an objective comparison of specific

6  expressive elements; it focuses on the "articulable similarities" between the two works.  Id.;

7  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); see Swirsky v. Carey,

8  376 F.3d 841, 845 (9th Cir. 2004) (the extrinsic test objectively considers whether the

9  works share a similarity of ideas and expression as measured by external, objective

10  criteria).  The "intrinsic test" is a subjective comparison that focuses on whether the

11  ordinary, reasonable audience would find the works substantially similar in the total

12  concept and feel of the works.  L.A. Printex Industries, 676 F.3d at 848; Cavalier, 297 F.3d

13  at 822.

14    Plaintiff contends that the designs of Defendants' plush toys are nearly identical to

15  the unique designs of its plush toys, which include birds with no bodies, wings, legs or feet,

16  and pigs with no bodies, legs or feet.  Pl.'s Mtn. at 13.  Plaintiff argues that Defendants have

17  not used the idea of a plush bird or pig toy by creating an independent form of expression

18  for its toys.  Id. at 14.  Instead, they have appropriated Plaintiff's own unique form of

19  expression.  Id.  Plaintiff asserts that a side-by-side comparison of Defendants' products and

20  its designs reveal an identical resemblance in the protected features as well as the "total

21  concept and feel" of Plaintiff's designs.  Id.  According to Plaintiff, its copyrighted designs

22  and Defendants' near exact knockoffs have the same arrangement, proportion, size, shape

23  and colors.  Id.

24    The Court finds that Plaintiff has shown that it is likely to prove that the plush toys

25  which Defendants distribute are substantially similar to Plaintiff's Copyright Works.

26  Plaintiff has satisfied both the extrinsic and intrinsic tests for substantial similarity.  A side-

27  by-side comparison of the respective products reveals that Defendants' products are

28  substantially similar to Plaintiff's products in their size, shape, features, and colors.  See

Compl., Exh. D; Drangel Decl., Exh. G; Greenfield Decl., Exh. B.  There are no substantial material differences between the overall design of Plaintiff's plush toys and Defendants' alleged knockoff plush toys.  Given the similarity in the products, the Court finds that it is likely that consumers would find the works substantially similar in the "total concept and feel of the works."  Accordingly, for the reasons stated above, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on its Copyright Act claim.

**b.      Lanham Act**

To prevail on its trademark infringement claim, plaintiff must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012).  A plaintiff's registration of a mark constitutes prima facie evidence that plaintiff has a protectable ownership interest in the mark.  See Dep't of Parks & Recreation for State of Cal. v. Bazaar del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see also Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (registration of a mark constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration).  Here, because Plaintiff has submitted evidence demonstrating that it is the registered owner of U.S. Trademark Registration No. 3,976,576 for ANGRY

BIRDS and U.S. Trademark No. 3,988,064 for  (i.e., the Marks), Compl., Exh. A; Hed Decl., Exh. N,[4] and because Defendants do not contend that Plaintiff has no protectable ownership interest in the Marks, the sole remaining element is the issue of confusion.

"The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion."  M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1080 (9th Cir. 2005).  To determine whether there is a

---

[4] According to Plaintiff, it "has used and is currently using, the ANGRY BIRDS Marks in commerce . . . or in connection with [its] sale of ANGRY BIRDS merchandise and plan[s] to continue [its] use in the future."  Pl.'s Mtn. at 15.  As such, Plaintiff claims that its rights are senior to Defendants' rights in the ANGRY BIRDS marks.  Id.

1   likelihood of confusion between the parties' allegedly similar goods, the Ninth Circuit has

2   identified eight relevant factors for courts to consider: (1) strength of mark; (2) proximity of

3   the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing

4   channels used; (6) type of goods and the degree of care likely to be exercised by the

5   purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of

6   expansion of the product lines.  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-349 (9th

7   Cir. 1979), abrogated on other grounds, Mattel, Inc. v. Walking Mountain Productions, 353

8   F.3d 792, 810 n. 19 (9th Cir. 2003); Network Automation, Inc. v. Advanced Systems

9   Concepts, Inc., 638 F.3d 1137, 1145 (9th Cir. 2011).

10          The Sleekcraft factors are not an exhaustive list of factors relevant to a judicial

11   determination of the likelihood of consumer confusion, and courts must consider such

12   factors as are relevant to the facts of the particular situation.  See Network Automation, 638

13   F.3d at 1142, 1145.  "The test is a fluid one and the plaintiff need not satisfy every factor,

14   provided that strong showings are made with respect to some of them."  Surfvivor Media,

15   Inc. v. Survivor Prods., 406 F.3d 625, 631 (9th Cir. 2005).

16          A party claiming trademark infringement is not required to prove that the alleged

17   infringer intended to deceive consumers.  E. & J. Gallo Winery v. Gallo Cattle Co., 967

18   F.2d 1280, 1293 (9th Cir. 1992).  However, when an alleged infringer knowingly adopts a

19   trademark similar to one owned by someone else, the court must assume that the public will

20   be deceived.  Sleekcraft, 599 F.2d at 354; M2 Software, 421 F.3d at 1085.

21          Plaintiff contends that the Sleekcraft factors weigh heavily in favor of a

22   determination that there is a likelihood of confusion between Plaintiff's products and

23   Defendants' products.  Specifically, Plaintiff argues that Defendants use their famous and

24   "widely renown" Marks for counterfeit plush toys that are substantially similar to Plaintiff's

25   plush toys, and that Defendants sell their plush toys in the same channels of trade to the

26   same end consumers.  Pl.'s Mtn. at 16.  Plaintiff also argues that Defendants have adopted

27   the Marks with the specific purpose of infringing them, as evidenced by the fact that

28

Defendants have continued to import and sell infringing plush toys after the United States Customs seized counterfeit plush toys imported by RPI and WS & S in summer 2012.  Id.

The Court finds that Plaintiff has sufficiently demonstrated a strong probability of establishing a likelihood of confusion under the Sleekcraft factors.  Plaintiff has presented evidence that its Marks are strong, given their widespread market recognition from the popularity of the Angry birds game and Angry Birds Plush Line.[5]  See Hed Decl. ¶¶ 2-6, Exhs. A-L; Greenfield Decl. ¶¶ 7-12.  Plaintiff has also presented evidence demonstrating that the plush toys sold by Defendants are substantially similar to the plush toys sold by Plaintiff and could easily be mistaken as genuine items.  See Compl., Exh. D; Drangel Decl., Exh. G; Greenfield Decl., Exh. B.  Further, Plaintiff has presented evidence showing that the marks on Defendants' plush toys are identical or substantially indistinguishable from Plaintiff's famous and recognizable Marks.  See Drangel Decl., Exh. G; Greenfield Decl. Exhs. B, D; Buckner Decl. ¶¶ 20-22; Compl., Exh. D.  Finally, Plaintiff has presented evidence that Defendants' plush toys are being sold in the same channels of trade as Plaintiff's plush toys.  See Drangel Decl., ¶¶ 18-19, Exh. H; Greenfield Decl. ¶¶ 7-11.[6]

Given the popularity of the Angry Birds game and the Angry Birds Plush Line, the Court finds it reasonable to conclude that Defendants were aware of Plaintiff's Marks and chose to take advantage of the popularity of the Angry Birds game and merchandise by infringing Plaintiff's Marks.  Indeed, Plaintiff has submitted evidence showing that Defendants have continued to use Plaintiff's Marks with knowledge that they are valuable trademarks of another company or person.  Plaintiff presented evidence demonstrating that

---

[5] " 'The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws.' "  Network Automation, 638 F.3d at 1149.  Two relevant measurements are conceptual strength and commercial strength.  Id.  Conceptual strength involves classification of a mark along a spectrum from generic to fanciful, while commercial strength is based on "actual marketplace recognition."  Id.  The Court notes that Plaintiff did not address the conceptual strength of the Marks.

[6] According to Defendants' website, RPI is a supplier of plush toys to supermarkets, wholesalers, and most of the amusement parks in the United States.  See Drangel Decl., Exh. H.

Defendants have continued to sell plush toys that are substantially similar to Plaintiff's plush toys after the United States Customs seized goods at the port of San Francisco in June and July 2012 that customs determined infringed Plaintiff's copyrights. See Buckner Decl., ¶¶ 8-29; Drangel Decl., Exhs. A-B (letters indicating that United States Customs seized infringing products imported by two of the Defendants in June and July 2012). Because Plaintiff has submitted evidence showing that Defendants have knowingly adopted marks identical or substantially indistinguishable from Plaintiff's Marks, the Court concludes that the public will be deceived by Defendants' plush toys. See Sleekcraft, 599 F.2d at 354; M2 Software, 421 F.3d at 1085.

### 2. Likelihood of Irreparable Harm

As an initial matter, the Court rejects Plaintiff's suggestion that irreparable harm is presumed upon a showing of likelihood of success on the merits of a copyright or trademark infringement claim. For the reasons discussed above, the Court will not presume the existence of irreparable injury premised on a showing of success on the merits. The Court will examine whether Plaintiff has demonstrated a probability that it will suffer irreparable harm if an injunction does not issue.

To be entitled to injunctive relief, it is not sufficient that Plaintiff demonstrate a likelihood of success on the merits of its claims. Plaintiff must also demonstrate a likelihood that, absent the injunction, it will be irreparably harmed by Defendants' conduct. Winter, 129 S.Ct. at 375-376. While "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," intangible injuries that are incapable of measurement, like reputation or goodwill, may constitute irreparable harm. Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). In the trademark context, threatened loss of prospective customers and goodwill constitute irreparable harm. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001); see also CytoSport, Inc. v. Vital Pharmaceuticals, Inc., 617 F.Supp.2d 1051, 1080 (E.D. Cal. 2009) ("In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of

1   trade and loss of goodwill.") (citing <u>Opticians Ass'n of Am. v. Indep. Opticians of Am.</u>, 920

2   F.2d 187, 195 (3d Cir. 1990)).

3        Plaintiff contends that an injunction should issue because it has suffered and will

4   continue to suffer irreparable harm as "Defendants are fraudulently selling and offering for

5   sale plush toys that are nearly identical to Plaintiff's copyrighted Angry Birds plush toys

6   and bearing the ANGRY BIRDS trademark." Pl.'s Mtn. at 7.[7]  Plaintiff argues that if an

7   injunction does not issue, and Defendants are permitted to continue marketing substantially

8   similar plush toys, it will suffer irreparable harm in the form of lost business, goodwill and

9   reputation.  See <u>id.</u> at 17 -19.  Plaintiff also asserts that Defendants' products could pose a

10  potential public health risk as they may not be in compliance with numerous state and

11  federal laws, including laws regulating the material composition of products, because

12  Defendants' products only contain one label that indicates: "Made in China."  <u>Id.</u> at 18-19.

13  According to Plaintiff, while it stands to suffer a loss of its hard-earned sales, its goodwill

14  and consumer confidence that it may never be able to recoup, the risk involved in allowing

15  wide-scale distribution of a product for children ages three and up that has not been tested

16  for harmful or hazardous materials in accordance with United States laws is even more

17  "overwhelming."  <u>Id.</u> at 19.

18       The Court finds that Plaintiff has demonstrated that it will suffer irreparable harm if

19  an injunction does not issue.  Defendants' continued sale of substantially similar plush toys

20  will likely result not only in monetary harm from reduced sales, but harm to Plaintiff's

21  goodwill and business reputation, which Plaintiff has expended great energy, time and

22  money to obtain.  Defendants, by selling plush toys that are substantially similar to

23  Plaintiff's plush toys, have attempted to directly profit from the goodwill and reputation that

24  Plaintiff has cultivated for their products.

25

26

27       [7] Plaintiff also notes that consumers are continuing to be defrauded at the point-of-
    sale and/or post-sale as they are purchasing cheap knockoffs made of questionable materials
28  by unidentified manufacturers.  Pl.'s Mtn. at 7.

Given the likelihood of confusion between Defendants' and Plaintiff's products, the Court finds that Plaintiffs' reputation and goodwill may be substantially damaged in the absence of the issuance of a preliminary injunction. Because Plaintiff has no control over the quality of goods Defendants offer, there is a risk that the public perception of Plaintiff's products will be diminished if Defendants are allowed to continue the sale and distribution of substantially similar yet inferior plush toys. Indeed, if Defendants are selling inferior quality goods as Plaintiff suggest, this would likely result in consumers developing a poorer opinion of Plaintiff's products. The damage to Plaintiff's goodwill and reputation cannot be quantified, as it is unascertainable how many potential customers Plaintiffs will lose from their loss of reputation and goodwill attributable to consumers confusing their products with Defendants' products. Accordingly, Plaintiff has shown a likelihood that, absent an injunction, it will be irreparably harmed by Defendants' conduct.

### 3. Balance of Equities

The Court finds that the balance of equities weighs in favor of Plaintiff. Without an injunction, Plaintiff will suffer irreparable harm because Defendants will continue to sell substantially similar plush toys, which not only jeopardizes Plaintiff's ability to obtain a reasonable return on its investment in creating the Angry Birds Plush Line, but also interferes with Plaintiff's ability to control the goodwill and reputation of its recognized brand. Permitting Defendants to continue selling substantially similar plush toys will render it difficult for Plaintiff to maintain and restore its reputation and goodwill with the public.

Defendants, for their part, have failed to challenge Plaintiff's contention that they are selling knockoff plush toys that infringe Plaintiff's Copyright Works and Marks, and that Plaintiff has suffered and is continuing to suffer irreparable harm as a result. Nor have Defendants articulated any hardship that they would suffer if an injunction is issued. Indeed, while Defendants may lose some profits, they will not be burdened by an injunction that prohibits them from selling products that Plaintiff has shown are likely to be infringing upon Plaintiff's Copyright Works and Marks and which they have no right to sell. See Dr.

1  Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 924 F.Supp. 1559, 1574 (S.D. Cal.

2  1996) ("[w]here the only hardship that the defendant will suffer is lost profits from an

3  activity which has been shown likely to be infringing, such an argument in defense merits

4  little equitable consideration") (quoting Concrete Machinery Co. v. Classic Lawn

5  Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988)); see also Cadence Design Sys. v.

6  Avant! Corp., 125 F.3d 824, 829 (9th Cir. 1997) ("a defendant who knowingly infringes

7  another's copyright cannot complain of the harm that will befall it when properly forced to

8  desist from its infringing activities") (internal quotations omitted).

9        Moreover, Plaintiff has submitted evidence showing that Defendants claim to be a

10  major distributor of plush toys with 500 designs in various sizes.  Drangel Decl. ¶¶ 18-19,

11  Exh. H.  The Court has been presented no evidence which suggests that Defendants' overall

12  business will be significantly impacted by the injunction.  Dr. Seuss Enterprises, 924

13  F.Supp. at 1574 (where defendant's overall business would not be significantly impacted by

14  injunction, the balance of hardships tips decidedly in favor of the plaintiff).

15                    **4.    Public Interest**

16        In the trademark context, the public interest at stake is the right of the public not to

17  be deceived or confused.  See Internet Specialties West, Inc. v. Milon–DiGiorgio Enters.,

18  Inc., 559 F.3d 985, 993-994 (9th Cir. 2009); CytoSport, 617 F.Supp.2d at 1081 (citing

19  cases).  " 'When a trademark is said to have been infringed, what is actually infringed is the

20  right of the public to be free of confusion and the synonymous right of the trademark owner

21  to control his products' reputation.' "  CytoSport, 617 F.Supp.2d at 1081.

22        In light of the Court's determination regarding the likelihood of confusion, the Court

23  finds that the public interest will be served by issuing an injunction.  The public's interest is

24  served by avoiding consumer confusion in the marketplace.  See TrafficSchool.com v.

25  Edriver Inc., 653 F.3d 820, 827 (9th Cir. 2011) ("the Lanham Act is at heart a consumer

26  protection statute") (citing, among others, Alex Kozinski, Trademarks Unplugged, 68

27  N.Y.U. L. Rev. 960, 964 (1993) ("The great evil the Lanham Act seeks to prevent is that of

28

1    consumers being duped into buying a watch they later discover was made by someone other
2    than Rolex.")).

3          5.      **Conclusion**

4          Because Plaintiff has satisfied the four requirements under <u>Winter</u>, the Court
5    GRANTS Plaintiff's motion for a preliminary injunction.  When granting a preliminary
6    injunction, Rule 65(c) requires a court to set a security bond "in an amount that the court
7    considers proper to pay the costs and damages sustained by any party found to have been
8    wrongfully enjoined or restrained."  Fed.R.Civ.P. 65(c). "Despite the seemingly mandatory
9    language, Rule 65(c) invests the district court with discretion as to the amount of security
10   required, *if any*."  <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in
11   original and quotation marks omitted).  The district court may dispense with the filing of a
12   bond when it concludes there is no realistic likelihood of harm to the defendant from
13   enjoining his or her conduct.  <u>Id.</u>

14         Plaintiff argues that a bond in the amount of $5,000 is sufficient because the
15   infringing goods are inexpensive, selling at wholesale for approximately $2.40 per unit.
16   Pl.'s Mtn. at 22 (citing Drangel Decl. ¶ 17).  Plaintiff further argues that because the actual
17   cost of the Defendants' goods is likely no more than $.50 to $1.00 per unit, and because
18   Plaintiff does not anticipate that Defendants have more than 10,000 infringing units on
19   hand, a $5,000 bond should be more than adequate to protect Defendants' interests.  <u>Id.</u>
20   Based on Plaintiff's representations and Defendants failure to oppose the bond amount
21   requested by Plaintiff, the Court finds that a $5,000 bond is sufficient to secure the
22   preliminary injunction.
23   ///
24   ///

25         C.      **Motion to Conduct Expedited Discovery**

26         On November 6, 2012, the Court issued an Order denying Plaintiff's motion for
27   expedited discovery without prejudice to reconsidering this issue after Defendants have
28   received the opportunity to brief the issue and the Court has ruled on Plaintiff's motion for a

preliminary injunction.  Dkt. 18.  Given Defendants' failure to oppose the instant motion, Plaintiff renews its request for expedited discovery.  Pl.'s Reply at 2, Dkt. 24.  Specifically, Plaintiff requests the right to inspect and copy the documents identified by the Court in its November 6, 2012 Order that Defendants were ordered to preserve.  Id.  Plaintiff also requests permission to take the deposition of Defendant Park regarding these documents within three (3) business days after Plaintiff has inspected and copied the documents.  Id.

In support of its request, Plaintiff submitted evidence that Park told an investigator hired by Plaintiff on November 7, 2012 that he had ten cases of Angry Birds, and that he would be receiving more cases in two weeks.  Popp Decl. ¶ 3.  Plaintiff also submitted evidence that Park advised the process server on November 8, 2012 that he does not have any Angry Birds merchandise.  Reidy Decl. ¶ 5.[8]  Plaintiff contends that "[g]iven Defendant's false statement and belligerent conduct . . . there is a reasonable concern that Defendants will take action . . . to dispose of goods and/or records related to this action."  Pl.'s Reply at 2.  According to Plaintiff, because "Defendants have engaged in deceptive practices," it "may lose the opportunity for meaningful discovery about the requested relief absent expedited discovery."  Id. at 3.

Rule 26(d) of the Federal Rules of Civil Procedure generally prohibits a party from seeking discovery from any source before the parties have conferred as required by Rule 26(f).[9]  See Fed.R.Civ.P. 26(d).  Courts in the Ninth Circuit apply a "good cause" test in

---

[8] The process server avers that he observed an open box containing what appeared to be Angry Birds plush toys while he was serving process on Defendants at 4771 Arroyo Vista Blvd, Suite B, Livermore, California 94551.  Reidy Decl. ¶¶ 3-4, 6.

[9] Rule 26(d) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed.R.Civ.P. 26(d).

deciding whether to permit expedited discovery before the Rule 26(f) conference.[10]

Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275 (N.D. Cal. 2002); see also

Am. LegalNet, Inc. v. Davis, 673 F.Supp.2d 1063, 1066 (C.D. Cal. 2009); In re

Countrywide Financial Corp. Derivative Litig., 542 F.Supp.2d 1160, 1179 (C.D. Cal.

2008); Matson & Isom Technology Consulting v. Dell Inc., 2008 WL 3863447 (E.D. Cal.

2008); Qwest Commc'ns Int'l, Inc., 213 F.R.D. 418, 419 (D.Colo. 2003) (The "party

seeking expedited discovery in advance of [the] Rule 26(f) conference has the burden of

showing good cause for the requested departure from usual discovery procedures.").  "Good

cause exists 'where the need for expedited discovery, in consideration of the administration

of justice, outweighs the prejudice to the responding party.' "  In re Countrywide Fin. Corp.

Derivative Litig., 542 F.Supp.2d at 1179 (quoting Semitool, 208 F.R.D. at 276).  The court

must make this evaluation in light of "the entirety of the record . . . and [examine] the

reasonableness of the request in light of all the surrounding circumstances."  Semitool, 208

F.R.D. at 275 (citation and quotation marks omitted) (emphasis removed); Am. Legalnet,

673 F.Supp.2d at 1067.  "[C]ourts have recognized that good cause is frequently found in

cases involving claims of infringement and unfair competition."  Semitool, 208 F.R.D. at

276.

      The Court construes Defendants failure to respond to the instant motion as consent

to the granting of Plaintiff's request for expedited discovery.  Moreover, the Court finds that

Plaintiff has shown good cause to justify immediate access to the requested discovery

rather than postponing its ultimate production during the normal course of discovery.

Plaintiff has submitted evidence in connection with the instant motion that provides a

factual basis to support its claim that, in the absence of expedited procedures, Defendants

---

[10] "Courts are split as to whether a party seeking expedited discovery must satisfy a 'good cause' or 'reasonableness' standard or the more stringent standard set forth in Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which largely tracks the standard required for obtaining a preliminary injunction."  See Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc., 2003 WL 23350128, at *1 n. 7 (W.D.N.Y. 2003) (detailing the split).  However, courts in the Ninth Circuit have traditionally applied the "good cause" standard.

may conceal or dispose of relevant evidence. Further, the Court finds that the limited

discovery requested by Plaintiff is reasonable as it is narrowly tailored to obtain relevant

evidence that may be concealed or disposed of in the absence of an expedited process.

Defendants, for their part, do not dispute Plaintiff's claim that they "will take action . . . to

dispose of goods and/or records related to this action." Nor have Defendants articulated

any prejudice or hardship that will result if Plaintiff's request for expedited discovery is

granted.

Plaintiff has shown that its need for expedited discovery outweighs the prejudice to

Defendants. Consequently, Plaintiff's motion to conduct limited discovery on an expedited

basis is GRANTED. Plaintiff is authorized to immediately serve on Park a discovery

request pursuant to Rule 34 of the Federal Rules of Civil Procedure requesting that Park

produce and permit Plaintiff to inspect and copy the documents identified by the Court in

the Conclusion section of its November 6, 2012 Order. <u>See</u> Fed.R.Civ.P. 34(a)-(b).[11] Park

shall respond to the request within fourteen (14) days after being served. <u>See</u> Fed.R.Civ.P.

34(b)(2)(A). Plaintiff is also authorized to take the deposition of Park within three (3) days

---

[11] Rule 34(a) provides:

**(a) In General.** A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

after Park responds to the request.  Park's deposition shall be limited to the documents produced in response to the discovery request.

## III.   <u>CONCLUSION</u>

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.     Plaintiff's motion for a preliminary injunction is GRANTED.

2.     Defendants and their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of them are PRELIMINARY ENJOINED from:

(a)     manufacturing, importing, copying, advertising, promoting, offering to sell, selling, distributing or transferring any plush toys that are substantially similar to Plaintiff's Copyright Works or are likely to be confused with Plaintiff's Marks;

(b)      secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products that allegedly infringe Plaintiff's Copyrighted Works or Marks; and (ii) any records or other evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer or any products that allegedly infringe Plaintiff's Copyrighted Works and Marks; and

(c)     knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 2(a)-(b) above.

3.     Plaintiff shall post a bond in the amount of $5,000 within five (5) days from the date this Order is filed.

4.     Plaintiff's motion for expedited discovery is GRANTED.  Plaintiff may conduct the limited discovery as set forth above.

IT IS SO ORDERED.

Dated:  11-27-12

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge