# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| ROVIO ENTERTAINMENT LTD, | No. C 12-05543 SBA (LB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | [Re: ECF No. 45] |
| ROYAL PLUSH TOYS, INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Rovio Entertainment Ltd. ("Rovio"), which is the developer of the video game "Angry Birds," filed suit against defendants Royal Plush Toys, Inc., Western Sales and Services Inc., Royal Trade Int'l Inc., and Jong K. Park (collectively, "Defendants") for selling counterfeit versions of Angry Birds-themed plush toys. *See generally* Complaint, ECF No. 1.[1] Defendants' default was entered and now Rovio moves for default judgment against them. Motion for Default Judgment, ECF No. 45. The district court referred Rovio's motion to the undersigned for a report and recommendation. 3/13/2013 Order, ECF No. 41; Notice of Referral, ECF No. 42. Upon review of the papers submitted and the record in the case, the undersigned **RECOMMENDS** that the district court grant Rovio's motion.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

**STATEMENT**

**I. FACTUAL ALLEGATIONS**[2]

Rovio is a private liability company that is organized under the laws of Finland as has its principal place of business in there, too. Complaint, ECF No. 1 ¶ 6. It is the developer of the successful puzzle video game "Angry Birds." *Id.* ¶ 18. Angry Birds has a combined 1 billion downloads across all platforms, including both regular and special editions. *Id.* ¶ 20; Hed Declaration, ECF No. 48 ¶ 3, Exh. B. Players log more than 1 million hours of game time each day on the iOS version of the game and there are 40 million monthly active users. Complaint, ECF No. 1 ¶ 21; Hed Declaration, ECF No. 48 ¶ 3, Exhs. C, D. The popularity of the game has led to versions of it being created for personal computers and gaming consoles, a market for merchandise featuring its characters and even long-term plans for a feature film or television series. Complaint, ECF No. 1 ¶ 23; Hed Declaration, ECF No. 48 ¶ 6. Rovio also has an extensive world-wide licensing program for merchandise featuring its characters. Complaint, ECF No. 1 ¶ 24. Hed Declaration, ECF No. 48 ¶ 7; Greenfield Declaration, ECF No. 49 ¶ 5. Such merchandise includes Angry Birds plush toys, key chains, balls, PVC figures, bean bags, Christmas stockings, seasonal summer goods, banners and flags, lanyards, magnets, plush hats, snow globes, drinkware t-shirts, and cellphone accessories (collectively referred to as "Products"). Greenfield Declaration, ECF No. 49 ¶ 5.

Rovio's most popular Products are its round plush Angry Birds toys (collectively referred to as the "Angry Birds Plush Line"). Complaint, ECF No. 1 ¶ 32; Greenfield Declaration, ECF No. 49 ¶ 6, Exh. A. Since late 2010, well over 30 million units of the Angry Birds Plush Line have been sold in the United States alone. Greenfield Declaration, ECF No. 49 ¶ 9. In the United States, the Angry Birds Plush Line is sold through Rovio's authorized licensee, Commonwealth Toy & Novelty Company ("Commonwealth"), to well-known retailers such as Toys R Us, Kmart, Walmart, Shopko, Hallmark, Build A Bear, Parnida, Walgreens, CVS, Justice, Claires, Hot Topic, Transworld, and Spencer Gifts, among others. Complaint, ECF No. 1 ¶¶ 30, 33; Greenfield Declaration, ECF No. 49

---

[2] The factual allegations stated here are taken from Rovio's complaint and evidence submitted by Rovio in support of its motion for default judgment.

¶¶ 5, 7. The Angry Birds Plush Line also is sold to over 1,000 other independent retailers in the United States, as well as in amusement parks such as Universal Studios, Knotts Berry Farm, Cedar Point, Dorney Park, Hershey Park, Six Flags, Sea World, and Lego Land. Complaint, ECF No. 1 ¶ 33; Greenfield Declaration, ECF No. 49 ¶¶ 7-8.

Rovio filed for and obtained federal trademark and copyright registrations related to the Products. Complaint, ECF No. 1 ¶ 25; Hed Declaration, ECF No. 48 ¶ 8. Specifically, Rovio is the owner of the U.S. Trademark Registration No. 3,976,576 for ANGRY BIRDS for a wide variety of goods in Classes 9, 16, 28 and 41 and U.S. Trademark No. 3,988,064 for [image] for a wide variety of goods in Classes 9, 16, 28 and 41 (the "Marks"). Complaint, ECF No. 1 ¶ 26, Exh. A; Hed Declaration, ECF No. 48 ¶ 8, Exh. N. Rovio also owns copyrights related to the Products. Complaint, ECF No. 1 ¶ 27; Hed Declaration, ECF No. 48 ¶ 9. Rovio's copyrights protect the various proprietary characters that originated in the game and have been extended through its line of Products, which is updated from time to time to add new designs and products. Complaint, ECF No. 1 ¶ 27; Hed Declaration, ECF NO. 48 ¶ 9. In addition to its numerous common law copyrights, Rovio owns several United States Copyright Registrations that cover both 2D and 3D versions of its popular birds and pigs, including the following relevant certificates of registration: VA1769078, VA1778702, VA1778705, VA1778703, VA1776995, VA1776992, VA1769080, VA1064249, VA1777195 (the "Copyrights"). Complaint, ECF No. 1 ¶ 28, Exh. B; Hed Declaration, ECF No. 48 ¶ 9, Exh. O.

Rovio's Copyrights and Marks are vital to its business. Hed Declaration, ECF No. 48 ¶ 11. Accordingly, Rovio actively polices and enforces its intellectual property rights, including those associated with its Copyrights. Hed Declaration, ECF No. 48 ¶ 11; Drangel Declaration, ECF No. 46 ¶ 3. Rovio and its licensee, Commonwealth, have discovered that large quantities of pirated copies of the Angry Birds Plush Line are being sold throughout the United States. Complaint, ECF No. 1 ¶¶ 35-37; Greenfield Declaration, ECF No. 49 ¶ 10. Defendants are among the sources of these pirated copies. Complaint, ECF No. 1 ¶ 38; Greenfield Declaration, ECF No. 49 ¶¶ 11-12. Specifically, Rovio and Commonwealth discovered that the Defendants are selling infringing copies of the Angry Birds Plush Line from their business location at 4771 Arroyo Vista Blvd.,

1  Suite B, Livermore, CA 94551.  Complaint, ECF No. 1 ¶ 38; Greenfield Declaration, ECF No. 49 ¶
2  11; Drangel Declaration, ECF No. 46 ¶¶ 4-10, Exhs. A-E; Buckner Declaration, ECF No. 50 ¶ 2.
3  Defendants run a wholesale toy company from a warehouse closed to the public with no source
4  identify information inside or outside the warehouse.  Buckner Declaration, ECF No. 50 ¶ 9.

5  Rovio retained a licensed investigator to make purchases of Defendants' goods.  Complaint, ECF
6  No. 1 ¶¶ 37-39; Drangel Declaration, ECF No. 46 ¶ 12.  Goods were purchased by the investigator
7  on multiple occasions.  Complaint, ECF No. 1 ¶ 38, Exh. D; Buckner Declaration, ECF No. 50 ¶¶
8  3-29.  The goods purchased by the investigator were examined by Rovio's counsel, who confirmed
9  that the goods violated Rovio's copyright and trademark rights.  Complaint, ECF No. 1 ¶ 39;
10 Drangel Declaration, ECF No. 46 ¶¶ 6, 12-15, Exhs. B, G.  Defendants' infringing products also
11 have been seized by U.S. Customs on at least two occasions and confirmed to be counterfeit.
12 Drangel Declaration, ECF No. 46 ¶¶ 5-10, Exhs. A, B.  Rovio has identified at least 7 different
13 copyrighted designs among Defendants' products: Black Bird, Red Bird, White Bird, Yellow Bird,
14 Blue Bird, Green Bird, and Pigs ("Rovio Copyrighted Designs"), and a side-by-side comparison of
15 the parties' respective goods reveals that Defendants' counterfeit products are nearly identical to
16 Rovio's authentic Products from the Angry Birds Plush Line.  Complaint, ECF No. 1 ¶ 38, Exh. D;
17 Greenfield Declaration, ECF No. 49 ¶ 12, Exh. B (photos of Rovio's Products on the left side and
18 Defendants' counterfeit products on the right side); Drangel Declaration, ECF No. 46 ¶¶ 6, 14-18,
19 Exhs. B, G.  Rovio has never consented to Defendants' use of any of its Copyrights and/or Marks,
20 nor has it ever authorized Defendants to use any of its Copyrights and/or Marks.  Complaint, ECF
21 No. 1 ¶ 42; Hed Declaration, ECF No. 48 ¶ 12.

22 Defendants sold the goods with notice that the goods were in fact counterfeit and violated
23 Rovio's rights.  At least as early as July 2012, Defendants were on notice by U.S. Customs that
24 they were importing counterfeit Angry Birds plush toys.  Drangel Declaration, ECF No. 46 ¶¶ 5-6,
25 Exh. A.  Defendants nevertheless continued to purchase and offer for sale and sell counterfeit Angry
26 Birds plush toys through notice of this lawsuit, Drangel Declaration, ECF No. 46 ¶¶ 11-19, 25;
27 Buckner Declaration, ECF No. 50 ¶¶ 3-29, and the notice of preliminary injunction barring sales of
28 the Angry Birds plush toys.  Drangel Declaration, ECF No. 46 ¶¶ 21-23, 31, Exh. L.  Despite all the

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  evidence of purchases and sales, Mr. Park has claimed that the only sale of counterfeit products was
2  to Rovio's investigator. *Id.* ¶¶ 25-26, Exh. I. This contradicts evidence in the record. For instance,
3  a company named Gameroom Gallery purchased Angry Birds products – which later were
4  confirmed to be counterfeit – from Defendants on multiple occasions. *Id.* ¶ 26, Exh. J; Lansing
5  Declaration, ECF No. 47 ¶¶ 3-5, Exhs. 1, 2. In addition, Rovio's counsel's saw counterfeit Angry
6  Birds goods at Defendants' place of business when he visited the premises to review documents on
7  February 6, 2013. Drangel Declaration, ECF No. 46 ¶¶ 26-32, Exh. K.

8  Defendants later deleted records of the purchases and sales of Angry Birds plush toys in direct
9  violation of three court orders to retain such records. *Id.* ¶¶ 27-32. Rovio, however, was able to
10 review deleted invoices that were recovered from Defendants' Quick Books audit trail. *Id.* ¶¶ 21-34,
11 Exh. L. The invoices reflect sales by Defendants of counterfeit Angry Birds products from between
12 May 2012 and January 2013 (which, it should be noted, was after the preliminary injunction
13 enjoining such sales was ordered). *Id.* ¶ 31, Exh. L, M. The estimated total of Angry Birds sales
14 during this six-month period is nearly $350,000. *Id.* ¶¶ 31, 33-34, Exhs. L, M. Defendants' overall
15 sales, however, are likely greater than $350,000 because Defendants imported and sold the same
16 counterfeit goods since at least April 2011. *Id.* ¶ 31, Exh. M (invoices and packing lists related to
17 Defendants' purchases of tens of thousands of Angry Birds plush toys from April 15, 2011 through
18 December 3, 2011). Rovio was unable to recover records of sales made prior to May 2012, though,
19 because Defendants indicate that the computer on which those records were kept was stolen that
20 month. *Id.* ¶ 26, Exh. I.

21 **II. PROCEDURAL HISTORY**

22 Rovio filed suit against Defendants on October 29, 2012. Complaint, ECF No. 1. It brings the
23 following claims: (1) copyright infringement in violation of 17 U.S.C. § 501(a); (2) trademark
24 counterfeiting in violation of 15 U.S.C. § 1114(1)(b), 1116(d), and 1117(b)-(c); (3) infringement of
25 registered trademarks in violation of 15 U.S.C. § 1114; (4) false designation of origin, passing off,
26 and unfair competition in violation of 15 U.S.C. § 1125(a); (5) unfair competition in violation of
27 California Unfair Competition Law, Cal. Civ. Code § 17200; and (6) unjust enrichment. Complaint,
28 ECF No. 1 ¶¶ 44-90. Defendants were served with the complaint and summons on November 8,

2012.  Certificates of Service (Complaint), ECF Nos. 20-23.  On November 27, 2012, the district court issued a preliminary injunction enjoining "Defendants and their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of them" from, among other things, selling "any plush toys that are substantially similar to [Rovio's] Copyright Works or are likely to be confused with [Rovio's] Marks," and destroying "any products that allegedly infringe [Rovio's] Copyrighted Works or Marks" and "any records or other evidence" relating to the sale of them.  11/27/2012 Order, ECF No. 28.  Defendants failed to respond to Rovio's complaint, and on December 14, 2012, the Clerk of the Court entered their default.  Entry of Default, ECF No. 32.  Rovio notified Defendants by email of their default on December 19, 2012.  Drangel Declaration, ECF No. 46 ¶ 36.

After Rovio asked to conduct discovery on Defendants' business premises, the district court referred discovery to Magistrate Judge Spero.  See 1/15/2012 Letter from Rovio, ECF No. 33; Referral Order, ECF No. 34.  On January 28, 2013, Judge Spero held a discovery hearing at which Mr. Park appeared by telephone, and Judge Spero allowed Rovio to conduct an inspection.  1/28/2013 Minute Entry, ECF No. 37; Drangel Declaration, ECF No. 46, Exh. I.  Rovio's forensic evaluation shows that relevant business records were deleted from a hard drive retrieved from Defendants.  Drangel Declaration, ECF No. 46 ¶¶ 27-31.

In light of Defendants' default, on March 13, 2013, the district court ordered Rovio to file a motion for default judgment within 30 days and referred that soon-to-be-filed motion to the undersigned for a report and recommendation.  3/13/2013 Order, ECF No. 41.  Rovio filed its motion for default judgment on April 11, 2013.  Motion for Default Judgment, ECF No. 45.  The undersigned notes that Rovio seeks default judgment only with respect to its copyright infringement claim; it does not seek default judgment with respect to any of its other claims.  *Id.* at 2-3.  It asks the undersigned to recommend that judgment be entered in its favor and award $700,000 in statutory damages, post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a), and a permanent injunction enjoining Defendants from future infringement of its Copyrights.  *Id.* at 2.  Although Defendants were served with the motion on April 11, 2013, Certificate of Service (Motion for Default Judgment), ECF No. 51, they have not opposed it.

The undersigned held a hearing on Rovio's motion on May 15, 2013. Rovio appeared by telephone at it, but Defendants failed to appear. The court notes that Mr. Park, however, showed up after the hearing had ended. The undersigned put the matter over to May 30, 2013 at 10:30 a.m. and instructed Rovio's counsel to notify Mr. Park of the new date. The court also notified Mr. Park by email of the May 30, 2013 date.

The undersigned held another hearing on May 30, 2013. Rovio again appeared by telephone at it. Mr. Park came to the courtroom, sat down, and was there during check-in, but he left the courtroom before this action was called and never reappeared.[3]

## ANALYSIS

### I. SUBJECT MATTER AND PERSONAL JURISDICTION

Before entering default judgment, a court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

#### A. Subject Matter Jurisdiction

As described above, Rovio's copyright and trademark claims arise under federal law, namely, the Copyright Act, 17 U.S.C. § 501(a), and the Lanham Act, 15 U.S.C. § 1051 et seq. Accordingly, the court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331. Because the court has federal question jurisdiction over the federal claims, it also has supplemental jurisdiction over Rovio's remaining state law claims pursuant to 28 U.S.C. § 1367.

#### B. Personal Jurisdiction

Defendants were served in California and engaged in the activities that are the subject of this lawsuit in the Northern District of California. Complaint, ECF No. 1 ¶¶ 3, 7-10; Certificates of Service (Complaint), ECF Nos. 20-23. Accordingly, the court has personal jurisdiction over Defendants. *See SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *Draper v. Coombs*, 792 F.2d

---

[3] The court called this action twice to give Mr. Park an opportunity to return to the courtroom, but he did not.

REPORT AND RECOMMENDATION
C 12-05543 SBA (LB)                                                7

1    915, 924 (9th Cir. 1986).

## C. Adequacy of Service

Federal Rule of Civil Procedure 4(h)(1)(B) allows for service in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer . . . or any other agent authorized by appointment or by law to receive service of process . . . ." Similarly, Rule 4(h)(1)(A) authorizes service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under California law, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Civ. Proc. Code § 415.10. A summons can be served on a corporation by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. Cal. Civ. Proc. Code § 416.10(a). A summons can also be served on a corporation by delivering a copy of the summons and complaint to the president, chief executive officer, or other head of the corporation. Cal. Civ. Proc. Code § 416.10(b). A dissolved corporation can be served by delivering the process to an officer or agent who controls the corporation's assets or an agent upon whom process might be served at the time of dissolution. Cal. Corp. Code § 2011(b).

Here, Rovio served Mr. Park, personally and as owner of Royal Plush Toys, Inc., Western Sales and Services, Inc., and Royal Trade Int'l Inc., with the complaint and summons on November 8, 2012. Certificates of Service (Complaint), ECF Nos. 20-23. Thus, based on the documents submitted, the undersigned finds that Rovio properly served Defendants.

## II. DEFAULT JUDGMENT

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for—and the court may grant—a default judgment against a defendant who has failed to plead or otherwise defend an action.[4] *See* Draper, 792 F.2d at 925. Default judgments generally are

---

[4] Under the Federal Rules and the Soldiers' and Sailors' Civil Relief Act of 1940, default judgments cannot be entered against persons in military service, or against minors or incompetent persons unless a general guardian, conservator, or like fiduciary has appeared. Fed. R. Civ. P.

disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The court must consider the following factors—commonly referred to as the *Eitel* factors—when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471-72. The factors here, on the whole, favor entry of default judgment against Defendants.

**A. The Merits and Sufficiency of the Complaint (The Second and Third *Eitel* Factors)**

When considering the *Eitel* factors, the merits of a plaintiff's substantive claims (the second *Eitel* factor) and the sufficiency of the complaint (the third *Eitel* factor) are often analyzed together. These two factors require that the plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978). Here, Rovio seeks default judgment with respect to its copyright infringement claim only. The elements of copyright infringement are "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004) (citing, inter alia, 17 U.S.C. § 501(a)). Rights under the Copyright Act include the right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, to distribute copies of the work and to display the copyrighted work publicly. 17 U.S.C. § 106.

After entry of default, well-pleaded factual allegations in the complaint regarding liability are taken as true, except as to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Here, as described above, Rovio's alleges that it owns copyrights related to the Products. Complaint, ECF

---

55(b)(2); 50 U.S.C. App. § 520. Because Defendants have made no appearances in this action, and Rovio's counsel's declaration accompanying Rovio's motion for entry of default asserts that Mr. Park does not fall within any of these exceptions, Drangel Declaration re: Entry of Default, ECF No. 31-1 ¶ 5, the undersigned finds that default judgment is not barred on these grounds.

No. 1 ¶¶ 27-28; Hed Declaration, ECF No. 48 ¶ 9.  Specifically, Rovio owns several United States Copyright Registrations that cover both 2D and 3D versions of its popular birds and pigs, including the following relevant certificates of registration: VA1769078, VA1778702, VA1778705, VA1778703, VA1776995, VA1776992, VA1769080, VA1064249, VA1777195.  Complaint, ECF No. 1 ¶ 28, Exh. B; Hed Declaration, ECF NO. 48 ¶ 9, Exh. O.  A registration certificate constitutes prima facie evidence of a valid copyright, and shifts the burden to the opposing party to prove the invalidity of the copyright.  *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  Defendants have not offered any evidence to rebut the presumption created by Rovio's copyright registration certificates that Rovio's copyrights are valid.  Rovio also alleges that Defendants are selling infringing copies of the Angry Birds Plush Line and that their counterfeit products are nearly identical to Rovio's authentic Products from the Angry Birds Plush Line.  Complaint, ECF No. 1 ¶ 38, Exh. D; Greenfield Declaration, ECF No. 49 ¶¶ 11-12, Exh. B (photos of Rovio's Products on the left side and Defendants' counterfeit products on the right side); Drangel Declaration, ECF No. 46 ¶¶ 4-10, 14-18, Exhs. A-E, G; Buckner Declaration, ECF No. 50 ¶ 2.  Rovio further alleges that it has never consented to Defendants' use of any of its Copyrights, nor has it ever authorized Defendants to use any of its Copyrights.  Complaint, ECF No. 1 ¶ 42; Hed Declaration, ECF No. 48 ¶ 12.  Based on these allegations, the undersigned finds that Rovio has adequately pled that Defendants infringed upon its Copyrights in violation of 17 U.S.C. § 501.

**B. The Remaining *Eitel* Factors**

The remaining *Eitel* factors, on the whole, also weigh in favor of granting default judgment.

*1. The Possibility of Prejudice to Rovio*

If the motion is not granted, Rovio has no recourse to prevent Defendants from continuing to infringe its Copyrights and sell counterfeit versions of the Products in the Angry Birds Plush Line.

*2. The Possibility of a Genuine Dispute Concerning a Material Fact*

Defendants never answered the Complaint, and although Mr. Park has claimed that the only sale of counterfeit products was to Rovio's investigator, Drangel Declaration, ECF No. 46 ¶¶ 25-26, Exh. I, his unsupported assertion is belied by substantial evidence suggesting the opposite.  Given this evidence, the undersigned finds the possibility of a genuine dispute concerning a material fact to be

unlikely.

*3. Excusable Neglect*

There is no suggestion that Defendants' default was a result of excusable neglect.

*4. The Sum of Money at Stake in the Action*

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, *3 (N.D. Cal. Jan. 8, 2010) (citing *Eitel*, 782 F.2d at 1472). Nevertheless, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. C–10–2212 EMC, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys fees were appropriate as they were supported by adequate evidence provided by plaintiffs).

The Copyright Act normally authorizes statutory damages of $750 to $30,000 per infringed work, 17 U.S.C. § 504(c)(1), but in cases where the copyright owner sustains the burden of proving that the infringement was committed willfully, the Copyright Act authorizes enhanced statutory damages of up to $150,000 per infringed work. *Id.* § 504(c)(2). Here, Rovio seeks $700,000 in statutory damages ($100,000 each for Defendants' infringement of the Rovio Copyrighted Designs found among Defendants' counterfeit products. This is a large amount that would probably be a substantial burden on Defendants, and requests for such large sums of money generally counsel against entry of default judgment. See Eitel, 782 F.2d at 1472.

*5. The Strong Policy in the Federal Rules Favoring Decisions on the Merits*

Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see Board of Trustees*, 2010 WL 145097, *4. This factor also favors entry of default judgment in this case.

REPORT AND RECOMMENDATION
C 12-05543 SBA (LB)                                                   11

## III. THE RELIEF SOUGHT

As mentioned above, Rovio seeks $700,000 in statutory damages ($100,000 each for Defendants' infringement of the Rovio Copyrighted Designs found among Defendants' counterfeit products), post-judgment interest, and a permanent injunction. Each of these remedies is addressed in turn.

### A. Statutory Damages

Rovio seeks statutory damages under the Copyright Act. Motion for Default Judgment, ECF No. 45 at 3, 21-25. As explained above, the Copyright Act normally authorizes statutory damages of $750 to $30,000 per infringed work, 17 U.S.C. § 504(c)(1), but in cases where the copyright owner sustains the burden of proving that the infringement was committed willfully, the Copyright Act authorizes enhanced statutory damages of up to $150,000 per infringed work. *Id.* § 504(c)(2). Here, Rovio seeks $700,000 in statutory damages ($100,000 each for Defendants' infringement of 7 Rovio Copyrighted Designs found among Defendants' counterfeit products). Motion for Default Judgment, ECF No. 45 at 21-25.

Defendants have elected not to defend this case or dispute any of Rovio's allegations, and in light of their default, their willful infringement, as pled in the Complaint, is admitted. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (allegation of willfulness deemed admitted on default). Rovio alleges that Defendants infringed on their Copyrights by willfully and knowingly selling plush toys featuring the Rovio Copyrighted Designs, despite their being notice, by U.S. Customs, that they were importing counterfeit Angry Birds plush toys. Drangel Declaration, ECF No. 46 ¶¶ 5-6, Exh. A. Rovio also alleges that Defendants nevertheless continued to purchase and offer for sale and sell counterfeit Angry Birds plush toys even after notice of this lawsuit, Drangel Declaration, ECF No. 46 ¶¶ 11-19, 25; Buckner Declaration, ECF No. 50 ¶¶ 3-29, and entry of preliminary injunction barring sales of the Angry Birds plush toys. These allegations are sufficient to demonstrate willful infringement.[5]

---

[5] For the purposes of this inquiry, "a defendant acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement." *A & M Records, Inc. v. Gen. Audio Video Cassettes, Inc.*, 948 F. Supp. 1449, 1457 (C.D. Cal. 1996)

REPORT AND RECOMMENDATION
C 12-05543 SBA (LB)                                   12

The court nevertheless is given broad discretion to determine the amount of statutory damages. *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir.1990). In awarding statutory damages, courts in this District have considered whether the amount of damages requested bears a "plausible relationship" to the plaintiff's actual damages. *See Adobe Systems, Inc. v. Tilley*, No. C 09–1085, 2010 WL 309249, at *5 (N.D. Cal. Jan.19, 2010) (citing *Microsoft Corp. v. Ricketts*, No. C 06–06712, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007). Moreover, in determining the appropriate award, the court may consider such factors as "the expenses saved and profits reaped by the defendant in connection with the infringements, the revenues lost by the plaintiff as a result of the defendant's conduct, and the infringer's state of mind—whether willful, knowing, or merely innocent." *Lamb v. Starks*, 1997 U.S. Dist. LEXIS 11369 at *6 (N.D. Cal. Jul. 2, 1997).

In support of its request for $700,000 in statutory damages, Rovio provided evidence showing approximately $350,000 in sales from May 2012 through January 2013. Drangel Declaration, ECF No. 46 ¶¶ 31, 33-34, Exhs. L. It also provided evidence showing that Defendants imported tens of thousands of Angry Birds plush toys throughout most of 2011 as well, *id.* ¶ 31, Exh. M, although sales data is not available because the computer on which those records were kept apparently was stolen in May 2012, *id.* ¶ 26, Exh. I. Based on this evidence, the undersigned finds that the $700,000 that Rovio requests bears a plausible relationship to its actual (and likely actual) damages and are appropriate given Defendants willful violation of copyright law. Accordingly, the undersigned recommends that the district court award Rovio $700,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(2).

**B. Post-Judgment Interest**

Rovio also seeks post-judgment interest. Motion for Default Judgment, ECF No. 45 at 3, 25-26. Pursuant to 28 U.S.C. § 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court." Accordingly, the undersigned recommends that the district court award Rovio post-judgment interest calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

---

(citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990)).

REPORT AND RECOMMENDATION
C 12-05543 SBA (LB)                                  13

UNITED STATES DISTRICT COURT
For the Northern District of California

1  System, for the calendar week preceding the date of the judgment." *Id.*

## C. Permanent Injunction

Rovio also requests a permanent injunction "prohibiting Defendants from further infringement of any of [Rovio's] intellectual properties." Motion for Default Judgment, ECF No. 45 at 3, 19-21.

The Copyright Act, 17 U.S.C. § 502(a), permits the issuance of a permanent injunction to prevent future infringement. To receive injunctive relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). As alleged, Defendants have willfully infringed Rovio's Copyrights and continue to do so. In such circumstances, the court is authorized to issue a permanent injunction to prevent or restrain further infringements. *See* 17 U.S.C. § 502(a); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 940 (N.D. Cal. 1996) ("Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction."). Defendants' failure to respond to the suit, alongside Rovio's pleadings, suggests that their infringing activities will not cease absent judicial intervention. *See*, *e.g.*, *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003). The undersigned finds that Rovio will be irreparably harmed if an injunction is not issued and recommends that the district court enter one that enjoins Defendants from further infringement of Rovio's Copyrights.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that the district court grant Rovio's motion for default judgment and (1) award Rovio $700,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(2) and post-judgment interest calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment" pursuant to 28 U.S.C.1961(a) and (2) issue a permanent injunction that enjoins Defendants from further infringement of Rovio's Copyrights.

Any party may file objections to this Report and Recommendation with the district judge within

fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review of the issue in the district court.

Rovio is ordered to serve Defendants with a copy of this order.

**IT IS SO ORDERED.**

Dated: May 30, 2013

_____
LAUREL BEELER
United States Magistrate Judge